In re GIN FUNG.

(Circuit Court, D. Oregon. August 24, 1898.)

ALIENS—DEPORTATION OF CHINESE—CONCLUSIVENESS OF ORDER.
The rule that the decision of a collector refusing permission to a Chinaman to land is conclusive until reversed will not prevent a court from entertaining an application for a writ of habeas corpus in behalf of one who was refused a fair hearing by the collector, and deported before the expiration of the time allowed him by law for appeal.

This was an application for a writ of habeas corpus on behalf of Gin Fung, alleged to have been unlawfully restrained by order of the collector of Portland as a Chinese laborer unlawfully in the United States.

Charles J. Schnabel and Henry St. Rayner, for petitioner.
John H. Hall, for respondent.

GILBERT, Circuit Judge. A writ of habeas corpus was issued, directed to the master of the steamer Braemar, upon a petition which alleged that Gin Fung was a Chinese merchant, doing business in Portland, Or., and that Thomas J. Black, collector of customs of the United States for the district of Oregon, had arrested him on the charge of being a Chinese laborer unlawfully within the United States, and after a certain hearing had ordered him deported to China, and caused him to be delivered to the master of the steamer Braemar for that purpose. The defendant in the writ made answer to the effect that the petitioner had taken passage on the ship Braemar, from Hong

Kong to Portland, in June, 1898, and that he claimed to be a merchant, entitled to land in the United States; that on his arrival an investigation was had by the said collector of customs of said port, and that after due investigation the collector had determined that the petitioner was not a merchant, and was not entitled to land, and for that reason he has been detained on said vessel. To this answer reply was made by the petitioner that on July 8, 1898, the said collector had made a verbal order directing that the petitioner be deported to China by the master of said vessel, but that said order was made without authority, and without due process of law, and without a hearing, and that said collector refused to give the petitioner the opportunity to be heard, or to allow him time to produce witnesses to establish the fact that he was a merchant, and had been such merchant for more than eight years prior thereto, and that the verbal order of deportation was made upon a pretended investigation had by one B. F. Jossey, a Chinese inspector, who pretended to examine certain witnesses, and pretended to determine the right of the petitioner to be and remain in the United States, and that the said Jossey refused to allow petitioner reasonable time to produce witnesses, or an opportunity to be heard, and that the petitioner has not been permitted, either by said collector or by said Jossey, to produce testimony concerning his right to remain in the United States; that in fact petitioner is, and was for more than eight years prior to July, 1898, a merchant doing business in Portland, Or., and that he is ready to fully prove said fact if permitted an opportunity to do so. Upon the issues so made, the case was referred to Edward N. Deady, United States commissioner, to hear the testimony, and report the same to the court with his findings. Upon the report so submitted, the facts are shown to be as follows: On July 4, 1898, the steamer arrived at the port of Portland. On July 8th the question of the right of the petitioner to land came up for consideration by the collector of customs. He heard a portion of the testimony of one witness, and then left the room, delegating further examination of the witness to B. F. Jossey, Chinese inspector. Upon the testimony of the witness so offered, the collector was not satisfied of the right of the petitioner to land. A representative of the petitioner, Walter Bleick, requested time to produce further testimony. He was told that, if he could produce testimony by 4 o'clock on that day, he might do so. He was not able to obtain his witness until after 4 o'clock. He took the witness to the steamer Braemar, where he supposed Jossey to be, expecting the latter to examine the witness. Jossey was not at the steamer. On the following morning, Bleick produced his witness at the office of the collector. He met Jossey at the door, and asked permission to offer the testimony of his witness. Jossey consented, and said that the witness could be heard shortly. Jossey then remarked, in the presence of the witness, that it was not a proper thing for a young man to do to come down and swear at a Chinese landing; that they were going to arrest a man that morning for offering false testimony; and that he did not want to see a young man cast a shadow over his future reputation. As the result of these remarks, the witness, who was a boy of 18 years of age, was intimidated and declined to testify. No further testimony was taken

concerning the petitioner's right to land. As a matter of fact, the steamer had cleared from the port of Portland, on her way to China, at 9 o'clock the previous evening, taking the petitioner with her. From the testimony which is filed by the commissioner it is clearly proven that Gin Fung was a merchant, as claimed by him, and, as such, was entitled to land.

It is now urged in behalf of the defendant in the writ that the decision of the collector denying permission to land was an adjudication of the petitioner's right, and is conclusive until reversed on appeal to the secretary of the treasury, and that this court has no jurisdiction to review the decision upon a writ of habeas corpus. If there has been a hearing and a decision, such as is contemplated by the statute, there can be no question that the judgment of the collector is final and conclusive, and can only be reviewed on appeal to the secretary of the treasury. But can it be said that there has been a hearing or a decision? On the 8th day of July, the collector heard the evidence of one witness, a white man, to the effect that the petitioner was a merchant, and, as such, entitled to land. He heard no evidence contradicting this statement. He offered no reasonable opportunity to the petitioner to prove his case, or to produce further testimony. At 4 o'clock of the same day, he directed the master of the steamer to take the petitioner back to China. He permitted in his office the presence of a Chinese inspector, and allowed him to take an active part in the investigation of the right of Chinese passengers to land, so active a part that the impression was produced upon the petitioner's counsel that the inspector, and not the collector, conducted the examination. The inspector assumed to decide whether or not further testimony could be heard, and on the morning of the 9th, when he knew that the petitioner had already departed for China on the steamer, he intimidated the witness who came to testify that the petitioner was a merchant. This intimidated witness appeared before the commissioner subsequently, and gave evidence of his knowledge that the petitioner was a merchant. Under this state of facts, it cannot be said that the right of the petitioner to be and remain in the United States has been inquired into or determined by the collector, or that that officer has rendered a decision. It cannot be presumed that he intended to make a decision which would deprive the petitioner of his right of appeal. The time for appealing does not expire until two days after the decision; yet the petitioner was being hurried away to China on the very day of the pretended hearing. A decision which denies the right of appeal is not the decision which the statute intends shall be final. It is proper for this court, therefore, to determine whether the petitioner is lawfully deprived of his liberty by the master of the steamer. In re Monaco, 86 Fed. 117; In re Moses, 83 Fed. 995; In re Kornmehl, 87 Fed. 314. Judgment will be rendered ordering the discharge of the petitioner.