## UNITED STATES v. WONG CHUNG.

(District Court, N. D. New York. February 21, 1899.)

ALIENS—PROCEEDINGS FOR DEPORTATION OF CHINESE PERSON.

In a proceeding before a commissioner for the deportation of a Chinese person, the action of a deputy collector, some months previously, in refusing the defendant entry into the United States, is not an adjudication which constitutes a bar to the consideration of defendant's rights by the commissioner on the merits, where the deputy entered no decision, made no findings, and heard no evidence to rebut the prima facie showing made by defendant of his right of entry, but acted solely on statements made to him by a third person in a conversation in another city regarding a statement the latter had heard, and which was irrelevant, if true.

This is an appeal from a judgment of a United States commissioner ordering the deportation of the defendant to the empire of China.

On the 6th of December, 1898, the defendant was arrested and taken before the United States commissioner at Malone, N. Y., charged with being a Chinese person unlawfully in the United States, under section 12 of the act of May 6, 1882, as amended by the act of July 5, 1884. He offered in evidence as proof of his right to remain a certificate under section 6 of the act of July 5, 1884, permitting him to enter the United States as a student. This certificate complied in all respects with the law. It is signed by A. W. Brewin, acting registrar general, at Hong Kong, and is viséd by R. Wildman, United States consul general. Such a certificate is by said section 6 made prima facie evidence of the facts stated therein, "but said certificate may be controverted and the facts therein stated disproved by the United States authorities." No pretense was made at the hearing that this certificate did not in all things comply with the law and it seems to have been admitted at all stages of the proceeding that the defendant was the person mentioned in the certificate; at least nothing has ever appeared to the contrary. The only proof offered by the United States was in the nature of a plea in bar to the effect that the defendant had applied for admission into the United States at the port of Malone on the 13th of October, eight weeks before, and had been rejected by the deputy collector and returned to Montreal. The deputy collector testified that when the defendant appeared at Malone his identity seemed to be established and his papers appeared to be regular and genuine. He testified further as follows: "I went to New York on that evening. I met Mr. Clemenshire in New York that evening, on October 15th. Defendant was going to 11 Mott street, and Mr. Clemenshire told me that they did not know anything about him at that address, and that he heard that where he was going was in Hartford, Conn., was in laundry, and I telegraphed Mr. Shufelt to return these two men to Montreal, one of whom was defendant. * * * The defendant's identity seemed to be established by the paper. * * * I did not question the genuineness nor truthfulness of the statements of the certificate when presented. I never questioned the certificate about its being regular." It further appears from the testimony of the deputy collector that he had no reason to doubt the right of the defendant to enter the United States until his interview with Mr. Clemenshire. His action in rejecting the defendant was based solely upon what Mr. Clemenshire told him. Who Mr. Clemenshire is does not appear from

the record. It does not appear that the deputy collector ever reduced to writing the information he obtained from Clemenshire or that he made any formal decision at the time or gave any reason for his action. A letter was introduced in evidence signed by the deputy collector and addressed to "John Martin, Spl. Deputy," in which he says:

"We rejected and returned to Canada Ma Thui No. 1127 and Wong Chung No. 1128 as their stories were conflicting and contradictory."

This letter is dated November 10, 1898, four weeks after the defendant had been returned to Montreal, and cannot, in any view, be regarded as the "decision" upon which the deputy collector's action of October 15th was based.

There was also introduced a memorandum in the handwriting of the deputy collector, which is as follows:

"Malone, N. Y., Oct. 13, 1898.

"Name Wong Chung, 19 years old. Father's name Goon Laeu, lives 108 State St., Hartford, Conn. Uncle name One Bing Sing, lives 108 State St., Hartford, Conn. Been a student 5 yrs. in San Ning. Going to New York first. Queng Tuck Leung & Co., No. 11 Mott St. Do not know the number. Held for further investigation. Returned to Montreal on Saturday, Oct. 15, 98."

It appears, however, from the testimony of the deputy collector that he was in New York on October 15th and that he decided defendant's case while in New York and communicated the result by telegraph to Mr. Shufelt.

The proceedings before the deputy collector so far as they can be inferred from this record were as follows:

On October 13th the defendant appeared before the deputy collector and demanded entry into the United States by virtue of his certificate, duly signed and countersigned. On the same day he made several statements as to his age and destination. The case was then held for further investigation. On the 15th of October the deputy collector had an interview in New York with a Mr. Clemenshire, and soon thereafter telegraphed from New York to send the defendant back to Montreal.

Whatever decision the deputy collector made, the ground for such decision and the reasons which induced his action must be inferred from the foregoing facts and circumstances. There is nothing else in the case. The commissioner declined to consider the defendant's status upon the merits, taking 'the ground that the rejection by the deputy collector was final and controlling, and that he had no jurisdiction to proceed further in the case; he, therefore, ordered the defendant deported. From this decision the defendant appeals.

No question is raised by the United States attorney as to the regularity of this practice. U. S. v. Gee Lee, 1 C. C. A. 516, 50 Fed. 271.

R. M. Moore, for appellant.
Emory P. Close, U. S. Dist. Atty.

COXE, District Judge (after stating the facts). The court cannot resist the conclusion that the defendant has not, as yet, had a fair hearing. Upon the faith of a passport, issued under the treaties and laws of the United States, signed by the registrar general and viséd by the United States consul general at Hong Kong, the defendant has journeyed many thousand miles to secure advantages to which he is entitled if the statements of his certificate be true. He was turned back without even the pretense of a legal investigation. He was arrested, imprisoned and ordered back to China without a single fact to warrant such a course appearing on the record. The action of the collector was based upon an irrelevant rumor. It would be a misnomer to call it hearsay evidence; it was not evidence at all. In an ordinary conversation Mr. Clemenshire told the collector not what he knew, but what he had been told by some unnamed person. It was conjecture only. It was the merest shadow, not the shadow of

anything tangible, but of a nebulous and attenuated shade. It was "such stuff as dreams are made on," and the collector could have justified his course as well by asserting that it was dictated by a communication from the spirit world, or that it was supported by the revelations of the Koran. No man whose brain is in a normal condition would regulate the most trivial affairs of life upon such information.

When he left Malone the collector was, apparently, satisfied that the defendant was entitled to enter the United States. He knew nothing against the defendant. His papers were regular; his identification complete. Mr. Clemenshire knew nothing of the defendant, but he had heard something; where he heard it, when he heard it and from whom, does not appear. He had heard that "where the defendant was going was in Hartford, Conn., was in laundry." This is the sole basis for the collector's telegram ordering the defendant back to Montreal. No witness was sworn, no statement was reduced to writing, no written decision was made and no reason for his action was ever given by the collector to the defendant, who had no opportunity to answer or explain the rumor regarding his destination. With the aid of electricity and steam the defendant was sent forthwith out of the country. No opportunity to appeal was given.

In Gin Fung's Case, 89 Fed. 153, the court says:

"The time for appealing does not expire until two days after the decision; yet the petitioner was being hurried away to China on the very day of the pretended hearing. A decision which denies the right of appeal is not the decision which the statute intends shall be final."

See, also, In re Monaco, 86 Fed. 117.

No doubt the courts have gone far in sustaining the autocratic power vested in the officers of the customs under the acts in question. The widest latitude is given, and no doubt such authority is necessary and proper, but in every reported case where the decision has been upheld some semblance of legal procedure has been observed. The courts should not, unless the language of the law is too plain to admit of doubt, throw down every barrier which the rules of the common law have erected against the encroachment of arbitrary power. Not only was the information obtained from Mr. Clemenshire of a character too unreliable to sustain the action of the collector, but if true and proved to be true it was a wholly immaterial circumstance, in no way affecting the defendant's right to enter the United States. A student may go to a laundry or he may live at a laundry without changing his status as a student. In U. S. v. Chu Chee, 87 Fed. 312, not only did the defendants, who were minors, reside in a laundry but their father was the laundryman. They were shown to be students and were permitted to remain.

When the collector's action is founded upon a total misconception of the law the invalidity of his proceedings is recognized by the courts. In Re Leong Youk Tong, 90 Fed. 648, the court says:

"If, in this case, the collector had in fact decided * * * that the petitioner was a merchant, and as such, entitled to admission into the United States, but that he was denied admission for some other reason not connected with his status as a merchant, and not by statute or treaty made a ground of exclusion the order of deportation would undoubtedly be void."

The duty of the court to ignore a decision excluding an alien upon a ground not recognized by statute is also sustained in Re Kornmehl, 87 Fed. 314.

Again, it is doubtful, at least, whether the collector ever made such a decision as is contemplated by the statute. It is difficult to perceive how his action is entitled to any probative force whatever. When he concluded to reject the defendant he was in New York. His direction to Mr. Shufelt was by telegram. The telegram was not produced. No reason for his action was given. No fact was found by him. No conclusion was stated. While the collector was still in New York the defendant was returned to Montreal. The collector's report of his proceedings made a month afterwards cannot, of course, be regarded as a "decision" on which the rejection of October 15th was based. It will be noted as indicating the unreliable character of the proceedings before the collector, when offered as proof of the defendant's status, that in the report of November 10th he bases the rejection upon a ground which there appears for the first time; namely, "We rejected and returned to Canada Ma Thui and Wong Chung as their stories were conflicting and contradictory." This statement seems to be unsupported so far as the record is concerned, but if true it states no fact which warrants the deportation of the defendant.

The question presented by this appeal is whether the commissioner was concluded from considering the defendant's right to remain in the United States upon the merits because of the so-called decision of the collector. In other words, was this decision a bar to further investigation and conclusive evidence against the defendant? This question the court is constrained to answer in the negative, for the following reasons:

First. There was no decision such as the law contemplates. The decision, if there was one, was too informal, uncertain and contradictory to be accepted as an estoppel, or as conclusive evidence of any fact. In re Gin Fung, 89 Fed. 153.

Second. There was nothing before the collector authorizing the rejection of the defendant. The unsupported rumor on which he acted offered no statutory ground for rejection even if true. It is thought, moreover, that a decision by the collector, even if valid and based upon legal proof, would not operate as a bar in a subsequent proceeding before a commissioner. The cases holding such decisions to be final were, in a great majority of instances, rendered in habeas corpus proceedings to review the action of executive officers of the government vested by congress with the exclusive authority to admit or exclude aliens seeking admission to this country. Lem Moon Sing v. U. S., 158 U. S. 538, 15 Sup. Ct. 967, and cases cited; In re Moses, 83 Fed. 995.

The attention of the court has not been called to an authority for the proposition that the decision of an executive officer is final in an entirely distinct judicial proceeding. A United States commissioner is an officer charged by law with the duty of investigating these cases. He cannot order a Chinese person deported until such person is brought before him and "found to be one not lawfully entitled to re-

main." Act 1882, amended by Act July 5, 1884 (23 Stat. 115). This injunction to find the status of the Chinese person imposes upon the commissioner a duty which cannot be discharged if he be precluded from making an investigation because of a ruling of a collector made long before under a different statute and upon a different state of facts. If the contention of the district attorney be correct it is difficult to perceive how a Chinese person once rejected can ever afterwards enter the United States even though his right to do so can be established beyond the peradventure of a doubt. It is thought that congress did not intend so sweeping and far-reaching an interpretation of the act of August 18, 1894 (28 Stat. 372, 390). When a Chinese person is brought before a United States commissioner the burden is upon him to establish his right to remain. This he does by introducing his certificate. The burden then shifts and the United States must produce some proof to overcome this prima facie evidence or it will be the commissioner's duty to discharge the defendant. The United States may introduce a valid decision of a customs officer rejecting the defendant, but the introduction of this decision does not end the inquiry; it may throw light upon the question at issue, but it is not conclusive. The commissioner must still investigate and determine the question before him, which is, whether the defendant is, at the time of the hearing, not at some previous time, a person not entitled to remain.

A portion of the argument of the district attorney is based upon alleged facts not appearing in the record. The court, on appeal, is not permitted to consider such facts.

The conclusions reached are as follows:

First. The decision of the collector cannot be regarded "as a plea a bar and as evidence conclusive" in a subsequent judicial proceeding under a different law and to determine a different question.

Second. Even though the foregoing proposition were doubtful, the record in the present case fails to show a decision which justifies the conclusion that the defendant was unlawfully in the United States.

Third. As the United States relied in good faith upon the conclusive character of the collector's action as evidence, it should have an opportunity to offer such proof as it may be advised to rebut the prima facie case made by the defendant.

The judgment is reversed and the case is remanded to the commissioner to hear and determine the same upon such proof, in accordance with this opinion, as the parties may offer.

A similar order should be made in the case of Ma Suey.