## UNITED STATES v. CHIN FEE.

(District Court, D. Vermont. May 11, 1899.)

1. PROCEEDINGS FOR DEPORTATION OF CHINESE — EFFECT OF DECISION OF IMMIGRATION OFFICERS.

The provision of the appropriation act of August 18, 1894 (28 Stat. 390), making the decision of the immigration or customs officers adverse to the right of a Chinese person to enter the United States final, unless reversed on appeal by the secretary of the treasury, conferred no new powers on such officers, and their powers under the existing laws as to Chinese persons not laborers are limited to determining the sufficiency of the certificate of such a person to entitle him to entry. The provision relates solely to proceedings on applications to enter, and does not render the decision in such proceedings denying an applicant the right of entry conclusive against his right to remain in the United States after he has entered, when challenged by proceedings for his deportation.

2. SAME.

The decision of a customs officer that a Chinese person is not entitled to enter the United States, made after such person has already entered, and without any application for entry, is not such an adjudication as is made conclusive by the statute.

3. SAME.

A Chinese physician, not a laborer, who resided in this country for several years, registered as permitted by the statute, and afterwards went to China temporarily, intending to return, is entitled to remain in the United States after his entry.

This is an appeal by the defendant from an order of deportation made by a commissioner.

James L. Martin, U. S. Dist. Atty.

David J. Foster, for appellant.

WHEELER, District Judge. The appellant is of the Chinese race; was born in China; is a physician; came to New York when 27, in 1874; went to Chicago in 1893; was registered there in 1894; went to China, because of sickness of his father, in 1896, intending to return to this country; came to Montreal, and appeared at Rich-ford, in this district, in March, 1899; was taken before the deputy collector there, to whom he exhibited his certificate of registration, and by whom he was sworn, and asked as to his history and intentions. The deputy collector held that he was not entitled to come into the United States, informed him of that decision, and directed him to turn back to Canada. He remained in the United States, and was arrested and taken before the commissioner for being unlawfully within the United States, who ordered him deported to China. This appeal is from that order, and the question arising upon it is whether the appellant at the time of his arrest in this proceeding was unlawfully in the United States.

Those prohibited from coming into the United States, and from remaining here without certificates of residence, are laborers. The alien contract labor law used the same word in prescribing what persons should be excluded, and it was held not to include clergymen. Church of Holy Trinity v. U. S., 143 U. S. 457, 12 Sup. Ct. 511. The appellant, being a physician, would by parity of reasoning be without the prohibited class of Chinese laborers. Section 6 of the act of May 5, 1892, requiring Chinese laborers to procure certificates of residence from the collector of internal revenue, as evidence of their right to remain in the United States, as originally passed and as amended, contained a provision that "any Chinese person other than a Chinese laborer, having a right to be and remain in the United States, desiring such a certificate as evidence of such right, may apply for and receive the same without charge." The appellant before going to China was domiciled here, and, under the law as it then and ever since has existed, had the right to remain here, and appears to have had the certificate provided for as evidence by the law of such right. Section 8 of the act of 1882 provided that the master of any vessel arriving in the United States should, before landing or permitting to land any Chinese passengers, deliver and report to the collector of customs a list of all Chinese passengers on board, sworn to by the master.

"Sec. 9. That before any Chinese passengers are landed from any such vessel, the collector or his deputy shall proceed to examine such passengers, comparing the certificates with the list and with the passengers; and no passenger shall be allowed to land in the United States from such vessel in violation of law."

"Sec. 12. That no Chinese person shall be permitted to enter the United States by land without producing to the proper officer of customs the certificate in this act required of Chinese persons seeking to land from a vessel."

In Lau Ow Bew v. U. S., 144 U. S. 47, 12 Sup. Ct. 517, on habeas corpus against the collector and master detaining the person of a Chinese merchant from landing, the supreme court held that section 6 of the act of 1882, as amended by the act of 1884, requiring Chinese persons other than laborers about to come to this country to obtain certificates of permission and identity from their government, viséed by a diplomatic or consular representative of the United States there, as the sole evidence permissible to establish a right of entry into the United States, did not apply to Chinese merchants domiciled in the United States, "in China only for temporary purposes, animo revertendi," on their return to the United States, and he was discharged. This left him free to remain in the United States, according to his right. After this decision, provision was made in the appropriation act of August 18, 1894. that:

"In every case where an alien is excluded from admission into the United States under any law or treaty now existing, or hereafter made, the decision of the appropriate immigration or customs officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the secretary of the treasury." 28 Stat. 390.

After that, Lem Moon Sing v. U. S., 158 U. S. 538, 15 Sup. Ct. 967, arose on habeas corpus in favor of a Chinese merchant domiciled in the United States, and returning thereto from a temporary absence, against the collector and the manager of the transportation company, for relief from detention to prevent landing on the refusal of the collector to admit him. The case was essentially like Lau Ow Bew v. U. S., which was relied upon for the relator, except that the detention was after the act of 1894. The court said:

"Now, the difference between that case and the present one is that, by the statutes in force when the former was decided, the action of executive officers charged with the duty of enforcing the Chinese exclusion act of 1882, as amended in 1884, could be reached by the courts when necessary for the protection of rights given or secured by some statute or treaty relating to Chinese. But by the act of 1894 the decision of the appropriate immigration or customs officers excluding an alien 'from admission into the United States under any law or treaty is made final in every case unless on appeal to the secretary of the treasury, it be reversed.' To avoid misapprehension, it is proper to say that the court does not now express any opinion upon the question whether, under the facts stated in the application for the writ of habeas corpus, Lem Moon Sing was entitled of right, under some law or treaty, to re-enter the United States. We mean only to decide that that question has been constitutionally committed by congress to named officers of the executive department of the government for final determination."

In re Lee Yee Sing, 85 Fed. 635, decided later, and relied upon for the government here, was also upon petition for habeas corpus against the collector for detention on refusal to permit entry. The court said:

"His right to enter having been passed upon by the only officer clothed with authority to decide the question, the petition must be denied."

The act of 1894 gave no new or additional power to the immigration or customs officers, but what they had authority to pass upon before was made final, which was, as to Chinese persons not laborers, the sufficiency of their certificates as evidence, under the

provisions of the laws quoted, of their right to come then and there into the United States.    That was a different question from the determination of the right of Chinese persons, not laborers, being in the United States, to remain here.    Not those who have come irregularly, but those who, however they have come, have not any right to be and to remain here, are to be deported.    These cases upon the effect of the act of 1894 involved only the right of the customs officers to prevent the persons in question from landing, and not what the right of those persons to remain longer would have been after landing and commencing to remain.    These officers could decide what they would do, and could carry out their decision without review, except on appeal to the secretary of the treasury.    The status of such persons as commorant or inhabitant in this country does not appear to have been committed to them. The reservation of the supreme court in its opinion in Lem Moon Sing's Case shows that there might be rights remaining after the decision of the officials which would not be cut off.    Their decision would cover conclusively the control of persons seeking admission while in their custody for exclusion, but not their rights as to other matters, then or afterwards.    In re Monaco, 86 Fed. 117; In re Kornmehl, 87 Fed. 314.    The statutes quoted seem to imply that an application is to be made by Chinese persons to the customs officials for admission by land as well as by sea, upon which they are to act.    In this case no such application was made by the appellant.    He was in the United States when they accosted him, and took their proceedings, and ordered him to return to Canada. That was not an adjudication upon an application to come in, for there was none; and, if there had been one, the adjudication should have been such as would give opportunity of appeal, which does not appear to have been had.    In re Gin Fung, 89 Fed. 153; U. S. v. Wong Chung, 92 Fed. 141.    The order made was a requirement of departure without retaining custody, rather than an exclusion with it.    Nothing stands in the way of the right of the appellant to remain in the United States but these proceedings, as was shown by the decision in Lau Ow Bew's Case, and as was left remaining in Lem Moon Sing's, before cited.    He came at about the same time as Lau Ow Bew, and appears to have the same right to his domicile here, evidenced by his certificate, that Lau Ow Bew had when discharged from the custody of the customs officials in his case.    Appellant discharged.