### UNITED STATES v. CHIN LEN.

(Circuit Court of Appeals, Second Circuit. April 10, 1911.)

#### No. 112.

1. ALIENS (§ 32*)—PROCEEDINGS FOR EXCLUSION OF CHINESE—WEIGHT AND SUFFICIENCY OF EVIDENCE.

Relator, a person of the Chinese race, after entering the United States, was arrested and taken before a commissioner, who, after a hearing, found him to be a native-born citizen, entitled to remain in this country, and entered judgment accordingly. More than seven years afterward, relator left for China on a visit, presenting a certified copy of the judgment to the inspector at the port of departure, who made an indorsement thereon. On his return to the same port, he was denied admission. There was no tangible evidence that he was not the same person who departed, or to whom the commissioner's judgment related, nor to im-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

peach such judgment, which, on the contrary, was proved genuine. *Held*, that under such facts the inspector was not justified in arbitrarily disregarding it, and that his failure to give it proper credit and weight was a denial to relator of a fair hearing.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*

What Chinese persons are excluded from the United States, see note to Wong You v. United States, 104 C. C. A. 538.]

**2.** HABEAS CORPUS (§ 23*)—PROCEEDINGS REVIEWABLE—HEARING UNDER CHINESE EXCLUSION ACTS.

Where a Chinese person, claiming the right to enter the United States as a native-born citizen, is not given a fair hearing, a writ of habeas corpus is the proper remedy.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 17; Dec. Dig. § 23.*]

Appeal from the District Court of the United States for the District of Vermont.

Habeas corpus by Chin Len. From a judgment discharging the relator, the United States appeals. Affirmed.

The following is the opinion of Martin, District Judge, in the lower court:

The petitioner alleges in his petition for the writ: First, that the relator's appeal to the Secretary of Commerce and Labor was considered and passed upon by Ormsby McHarg, Acting Secretary, and not by the Secretary. Second, that the original decision excluding said Chin Len and the dismissal of his appeal was arbitrary and without proper exercise of discretion; that the records of Hon. Frederick G. Paddock, United States commissioner of the Northern district of New York, show that a Chin Len was tried by him and found to be lawfully in the United States, and was, on the 14th day of May, 1900, discharged, and a certificate of such discharge delivered to the said Chin Len, and that the relator is the Chin Len so discharged, and is identified to be such by several witnesses, wherefore it is alleged that the said Chin Len was arbitrarily, without warrant of law, and in the face of identification, denied admission into the United States.

Writ was issued, and Arthur L. Weeks, who had custody of the relator, made due and seasonable answer, which answer, briefly stated, denies the allegations contained in the petition of the relator. On hearing before me no question was made but what a Chinese person by the name of Chin Len was tried before Commissioner Paddock on the 14th day of May, 1900, on a complaint issued by some official of the government charging that the said Chin Len was a Chinese person and within the United States contrary to law, and that the said Chin Len was discharged by said commissioner; that the said commissioner issued to said Chin Len the certificate, a copy of which appears in the records of this case. So the fact of a Chin Len having been tried before a United States commissioner and discharged on the ground that he was a native-born citizen was not controverted; but it was claimed that this relator was not the Chin Len whose rights were thus adjudicated.

The first hearing was held before Inspector Arthur L. Weeks. That hearing was, under the rules of the Immigration Department, without counsel. No counsel is permitted to be present. At that hearing the relator testified that his name was Chin Len, and that he was the Chin Len who was tried and discharged as a native-born citizen by Commissioner Paddock in May, 1900, and to my mind fairly well described what occurred in and about his arrest and trial before said commissioner. It also appears that the inspector took the statement of said Commissioner Paddock, which was that a warrant was issued for the arrest of one Chin Len, who was tried by him, but that he has no record of the result of the hearing, as he had not then begun keeping such a record, but that the certificate in question is in his handwriting and issued by him. I need not discuss this subject further, for the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
187 F.—35

government raised no question as to the records showing that a Chin Len was tried and discharged. No further evidence was submitted to the inspector, and he decided that the relator was not the Chin Len so tried by Commissioner Paddock, and that he had not furnished proof of any other right to enter the United States, and therefore denied him admission; whereupon the relator appealed to the Secretary of Commerce and Labor, and pending said appeal the testimony of Chin Park, Moy J. Orne, and Chin Jung Du was added to the record.

Each of these witnesses testified that he knew Chin Len and that he came to this country about 10 years ago. Chin Park says that he is the relator's uncle, and that he is the Chin Len tried by Commissioner Paddock; that he knew about his being born in San Francisco, that he was his witness before Commissioner Paddock, and that it was upon his evidence that Commissioner Paddock adjudged Chin Len a citizen of the United States by birth and ordered him discharged. Chin Jung Du testifies that he was under arrest and in jail at Malone, N. Y., with the relator; that he was tried the same day before the same commissioner, and was discharged, and went with the relator to the city of Boston immediately after their discharge. Moy J. Orne testifies of his long acquaintance with the relator, and that he saw him in possession of this certificate as early as 1905.

It will be observed that no evidence was taken on the part of the government, yet with all this evidence the relator is found not to be the Chin Len so tried by Commissioner Paddock, and was denied admission. The ground of denial by Inspector Weeks seems to be, first, because of discrepancies in the testimony of the relator; second, he found the relator's photograph attached to the certificate was fraudulently affixed and the seal of the commissioner was a forged seal; third, that the relator testified that he obtained the certificate in Hong Kong, and therefore the certificate must have been fraudulently issued.

From his decision the relator appealed to the Secretary of Commerce and Labor, and, under the practice, Chinese applicants are permitted to have additional evidence taken before some Chinese inspector, ex parte. In the case at bar the relator availed himself of that privilege, and the testimony of Moy J. Orne and Chin Jung Du was added to the record. This was reviewed by Ormsby McHarg, Acting Secretary, and the decision of Inspector Weeks was affirmed. The practice in that bureau further affords a Chinese applicant the privilege of applying for review and having further evidence taken before an immigrant officer, ex parte. The relator availed himself of that privilege, as he had located the uncle, Chin Park, to whom he referred in the testimony that he gave before Inspector Weeks, but had not been able to locate him until about the time of making application for review. His application for review was referred by the Secretary to the Commissioner of Immigration at Montreal, who was authorized by said Secretary to pass upon the whole evidence as it should then appear. He was again denied admission for practically the same reasons given by Inspector Weeks, with the addition that there were discrepancies found in the testimony of the alleged uncle, Chin Park.

I find, by an inspection of the record:

First. That the discrepant statements referred to were of that character that they do not seriously affect the truthfulness of the evidence; that they do not go to the extent whereby any fair trier of the facts can say that the testimony in main is false. On the whole, the stories agree better than the average of honest witnesses testifying to transactions that occurred nine or ten years ago.

Second. There is no evidence tending to show that the relator committed any fraud in connection with the affixing of his photograph to the certificate of discharge. On the contrary, his good faith appears from the frankness with which he related it when first inquired of on that subject.

Third. The relator's testimony that he obtained his certificate at Hong Kong any unprejudiced trier of the facts must know was a mistake. The relator's testimony in that regard had reference to his obtaining some sort of a document before he departed from Hong Kong for the United States, several months before he was tried at all by the commissioner. Erasures are referred to on the certificate. The figures' "14," being the day of the

month when the certificate was issued, show that a change was made as to those figures; but the month of May and the year 1900 show no change, so that erasure as to a particular day of that May and of that year is of no consequence. Chin Park's statement as to the sending of the draft shows conclusively that it was the draft that the relator received which enabled him to secure his passage here. The relator testified that the certificate in question was handed to him by Commissioner Paddock at the time of the hearing, May 14, 1900, yet the inspector, the Acting Secretary of Commerce and Labor, and the commissioner at Montreal each seized upon the self-evident mistake that the relator made in his testimony that he received the certificate at Hong Kong prior to his trial at Malone. That is not a fair construction to be given to the testimony of a Chinaman who knows little or nothing about legal documents.

Fourth. The evidence before me is conclusive that this relator began living at Worcester, Mass., in the spring of 1900, and has been known to the people there as a Chinaman of good character, industrious, and has learned to speak our language; that he remained a resident of Worcester until November, 1907, when he concluded to make a visit to China; that on the 20th of November, 1907, he appeared at the port of Richford on his way to China. He then presented this certificate to the immigrant officer, who indorsed upon it the following: "Class—Native. Judgment Discharging Defendant. Port of Richford, Vermont, November 20, 1907. A Chinese person comparing with the within photograph and giving the above name departed through this port this 20th day of November, 1907, taking with him one copy of this paper and leaving one copy on file. Subject to investigation on his return. A. L. Weeks, Chinese Inspector."

Fifth. No question is made but what this relator is the same Chinaman who then departed from the United States; but when he comes back here, with the identical papers that he presented on his departure, he is found not to be the rightful owner and holder of that certificate. In view of all the evidence adduced in his favor, all of which tends to show that he is the Chinaman who was tried by Commissioner Paddock, that he has lived in the United States for nearly ten years, has learned our language, has gone forth from the United States, and is now seeking to return, the refusal on the part of the Immigration Department to permit him to return, as these facts appeared on the rehearing, at least, was the result of prejudice, instead of judicial fairness.

Sixth. Is it good faith, and ought it to be so considered by the courts, for government officers, after having received a certificate like the one in question and indorsing upon it "Subject to investigation," to say, under the cloak of those words, when the Chinaman returns, that that was a reservation whereby they may find the fact that he is not the same Chinaman who was tried and obtained those papers? Is that a square deal?

Seventh. How did the relator get this certificate? It was said in argument that he might have bought it of some other Chinaman. Then how did he get into this country ten years ago? It is said he was probably smuggled in. Then to support the findings of the Immigration Bureau we must presume fraud and perjury, and this the law never presumes. It must be proved. It has not been proved in this case.

There have been two hearings before me in this case. At the close of the first I was of the opinion that Inspector Weeks had acted according to his best judgment and discretion, and I affirmed his findings and filed an opinion, but without inspecting the testimony of the uncle, Chin Park, as it was then no part of the record, and, of course, not before me; neither did I observe the inspector's indorsement on the relator's certificate at the time of his departure from the United States November 20, 1907. Upon a more careful examination of the record it occurred to me that I had failed to do full justice to the relator, surely in not having the evidence of the alleged uncle brought into the record, whereupon I stated to the clerk that I would consider a motion for a rehearing and authorized him to so inform the attorney for the relator. A petition for rehearing was filed, notice of time and place for hearing of said motion was given, and on hearing of said motion, said attorney for the relator, said Inspector Weeks, and the district attorney being present, a rehearing was ordered and the former judgment vacated.

The case came on for rehearing January 28th, all of said parties being present, and the testimony of said uncle, Chin Park, was produced by Inspector Weeks and made part of the record, and other witnesses were examined. I now have no question whatever that the relator is the same Chinese person who was tried and discharged by Commissioner Paddock and that the Immigration Department has not afforded him a fair trial, and therefore, on February 8, 1910, ordered that he be discharged.

Alexander Dunnett, U. S. Atty.

E. F. Damon and Walter Bates Farr, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. [1] We think the facts establish beyond dispute that in February, 1900, a Chinese person named Chin Len entered the United States, was arrested and brought before a United States commissioner and, after a full hearing, was discharged, the commissioner finding that Chin Len was a citizen of the United States, having been born here and lawfully entitled to enter and remain in the United States. A copy of this discharge dated May 14, 1900, signed by the commissioner was given to Chin Len. After being discharged Chin Len went to the city of Worcester, Mass., in the spring of 1900, where he lived until November, 1907, having in the meantime learned the English language and having borne a good character in that community. In November, 1907, he returned to China for a visit. Before doing so, he made a declaration to the Chinese inspector at the port of Richford, Vt., showing that in May, 1900, he was discharged by United States Commissioner Paddock. The discharge was then in his possession and he stated to the inspector that he desired to go to China for a visit, intending to depart from and return to the United States by way of Richford. Attached to this declaration was a photograph of Chin Len. Chinese Inspector A. L. Weeks indorsed upon the certificate presented to him the following:

"Class—Native. Judgment discharging defendant. Port of Richford, Vermont, November 20, 1907. A Chinese person comparing with the within photograph and giving the above name, departed through this port this 20th day of November, 1907, taking with him one copy of this paper and leaving one copy on file. Subject to investigation on his return.

"A. L. Weeks, Chinese Inspector."

The relator returned to this country on the steamship Empress of China and arrived at Richford, Vt., July 30, 1909. He was denied admission by the inspector at Richford, whose finding was subsequently affirmed by the Secretary of Commerce and Labor. This ruling denying the relator admission was not based on any convincing proof, but on conclusions drawn from slight and, in our opinion, wholly inconsequential discrepancies in the papers and mistakes in the testimony of the relator. In view of all the facts and circumstances shown by the record, we have no doubt that the relator is the identical person who was adjudged to be entitled to enter and to remain in the United States by United States Commissioner Paddock's judgment, and that he is the person who went to China in 1907 and returned to this country in 1909. To find otherwise would be arbitrarily to disregard the overwhelming weight of testimony. We agree with the finding of the District Judge as follows:

"Fifth: No question is made that this relator is the same Chinaman who then departed from the United States, but when he comes back here, with the identical papers that he presented on his departure, he is found not to be the rightful owner and holder of that certificate. In view of all the evidence adduced in his favor, all of which tends to show that he is the Chinaman who was tried by Commissioner Paddock, that he has lived in the United States for nearly ten years, has learned our language, has gone forth from the United States and is now seeking to return, the refusal on the part of the Immigration Department to permit him to return as these facts appeared on the rehearing, at least, was the result of prejudice instead of judicial fairness."

Against the overwhelming weight of evidence which would be deemed sufficient in any common law action, we have the fact that there were erasures and alterations in the commissioner's judgment, that is, an examination of the judgment seems to show that something had been erased in the space where the figures "14" appear and that these figures, or one of them, had been inserted. There is no pretense that this was done or could have been done by the relator or by his connivance. The erasures, if made, were probably made by the commissioner, who inserted the wrong date and immediately corrected his mistake. In any event, however, it is undisputed that the hearing before the commissioner was in May, 1900, that his judgment was entered then and that the certificate given to the relator contains the following endorsement:

"United States of America, Northern District of New York. I, Frederick G. Paddock, United States commissioner for the Northern district of New York, do hereby certify that the within is a true copy of the judgment rendered in the within case on the 14th day of May, 1900, and of the whole thereof. Fredk. G. Paddock, United States Commissioner for the Northern District of New York. Dated at Malone, N. Y., this 14th day of May, 1900."

Conceding that some other figures had previously occupied the space where the figures "14" now are, of what moment is it upon this proceeding? No deduction unfavorable to the relator can be drawn therefrom. No motive for the change, if made, except a perfectly honest one can be suggested. The same observations are true regarding the alleged fraud in affixing the commissioner's seal and the perfectly obvious mistake of the relator in saying that he received the certificate when he was in China, evidently confusing it in his mind with a document to be obtained in Hong Kong before coming to this country.

The relevant fact and the only relevant fact was whether he was Chin Len who was adjudged to be a citizen of the United States by United States Commissioner Paddock in May, 1900. There was no other issue, and this being established without contradiction, the inspector's refusal to permit him to return had no tangible basis on which to rest and was without authority of law.

The officials charged with the enforcement of the Chinese exclusion acts should give due force and effect to the judgments of the United States commissioners. The relator presented to the inspector at Richford a duly authenticated judgment showing that he was not an alien, but a citizen of the United States entitled to enter without molestation. Unless that judgment was impeached or the relator was

shown not to be Chin Len, the inspector had no right to refuse him admittance. Neither of these propositions was established. On the contrary, the judgment has been proved genuine and the attempt to show that the relator was not Chin Len has wholly failed.

The case is much stronger than many of the reported cases where the Chinese persons, seeking entrance, endeavored by the testimony of witnesses to establish their citizenship. In the present case that fact had been judicially determined by the finding of a competent tribunal. The inspector was not justified in arbitrarily disregarding this judgment. He could prove it to be invalid or fraudulently issued, but he could not treat it as a nullity upon mere suspicion and conjecture. He was bound to treat it as valid until its invalidity was established. No relevant question of fact was presented so far as the commissioner's judgment was concerned, or, indeed, upon the question of identity.

[2] In cases where the relator does not have a fair hearing the writ of habeas corpus is the proper remedy. Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369, and cases cited. We are constrained to hold, therefore, that the hearings before the inspector and the Department of Commerce and Labor were not full, fair and unbiased, and that the decision refusing the relator admission to the United States was not warranted.

The order is affirmed.