WONG YEE TOON v. STUMP, Immigration Com'r.

(Circuit Court of Appeals, Fourth Circuit. May 2, 1916.)

No. 1415.

1. ALIENS ⊘═32(8)—CHINESE PERSONS—CERTIFICATE.

A certificate issued to a Chinese person, showing his right to enter and remain in the United States, is prima facie evidence of his right, and he cannot be deported by immigration authorities without substantial evidence showing that he was not entitled to enter and remain.

[Ed. Note.—For 'other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ⊘═32(8).]

2. EVIDENCE ⊘═317(14)—HEARSAY—WEIGHT.

Hearsay evidence of the statement of another Chinese person that petitioner, a Chinese person, admitted as the minor son of a merchant, was not the son of such merchant, is not admissible to establish that fact; the statement not having been made without contradiction in the presence of petitioner or any other person called upon to deny it, so as to become an admission.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1187; Dec. Dig. ⊘═317(14).]

3. ALIENS ⊘═23(2)—CHINESE EXCLUSION—ADMISSION AS MEMBER OF EXEMPT CLASS.

A minor son of a Chinese merchant, admitted as a member of an exempt class, does not forfeit his right to remain in the United States by subsequently working as a laborer.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 77; Dec. Dig. ⊘═23(2).]

4. ALIENS ⊘═32(12)—DEPORTATION OF CHINESE—REVIEW OF PROCEEDINGS OF IMMIGRATION AUTHORITIES.

While the courts will not weigh the evidence on which immigration authorities ordered the deportation of a Chinese person as one not belonging to an exempt class, the courts will review such proceedings, and may reverse them where there is no evidence to sustain the rulings by the immigration authorities.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 94, 95; Dec. Dig. ⊘═32(12).]

5. ALIENS ⊘═32(8)—CHINESE PERSONS—DEPORTATION—EVIDENCE—SUFFICIENCY.

In a proceeding to deport a Chinese person under Chinese Exclusion Act May 5, 1892, c. 60, § 6, 27 Stat. 25, as amended by Act Nov. 3, 1893, c. 14, § 1, 28 Stat. 7 (Comp. St. 1913, § 4320), held, that there was no evidence, which is that furnishing or tending to furnish proof of any fact, warranting deportation on the ground that such person was not a member of an exempt class.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ⊘═32(8).]

6. WORDS AND PHRASES—"EVIDENCE."

Evidence is that which furnishes or tends to furnish proof. It is that which brings to the mind a just conviction of the truth or falsehood of any substantive proposition which is asserted or denied.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Evidence.]

Woods, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore, John C. Rose, Judge.

Petition by Wong Yee Toon against Bertram N. Stump, Commissioner of Immigration, for writ of habeas corpus. From a judgment denying the writ (227 Fed. 247), petitioner appeals. Reversed.

The facts which are not controverted in this case, are in substance these:

The appellant, Wong Yee Toon (who will hereafter be referred to as Toon), came from China to the United States on the steamship Korea, landing in San Francisco, Cal., about October 19, 1913. An inspector for the Department of Labor made an examination of Toon's right to admission, and reported adversely to the Department, but upon an examination by the law section Toon was, on November 7, 1913, admitted to this country as a member of one of the exempt classes by virtue of the fact that he was the minor son of a Chinese merchant, named Wong Que Teung, of Oakland, Cal., and a certificate, dated December 4, 1913, numbered 13,744 was given him, identifying him as the minor son of the said merchant. Wong Que Teung (who will hereafter be referred to as Wong) came to this country in 1901 and was admitted as a merchant, and since that time has been engaged in the mercantile business at Oakland, Cal., and some other places. After the arrival of Wong, a son by the name of Wong Yee Gooey came over from China and was admitted, then Toon came at the date above mentioned, and a little later on another son, Wong Yee Foo, also came to this country and was admitted. The order of the ages as given in the record is Foo 20 years, Gooey 19, and the present appellant 17 years of age.

Some two months after Toon's arrival in this country, having remained in the meantime with the merchant Wong at Oakland, Cal., he went to Baltimore, Md., and took up his abode with a Chinese laundryman by the name of Won or Wong Jim Lee (who will be referred to as Lee), where he was found by the inspector of the Department on the 29th day of December, 1914. It is admitted that Wong was a merchant, and also that he was present in China at the period essential to paternity of Toon.

The inspector, in consequence of declarations alleged to have been made by Lee, information received from persons relative to Toon's working in the laundry, and some other circumstances (all of which will be discussed hereafter) procured to be issued on the 22d day of January, 1915, by an Assistant Secretary of Labor, a warrant for the arrest of Toon on the following grounds: "That he has been found within the United States in violation of section 6, Chinese Exclusion Act of May 5, 1892 [27 Stat. 25, c. 60], as amended by the act of November 3, 1893 [28 Stat. 7, c. 14, § 1 (Comp. St. 1913, § 4320)], being a Chinese laborer not in possession of a certificate of residence; that he has been found within the United States in violation of Rule 9, Chinese Rules, and of the Supreme Court decision on which such rule is based, having secured admission by fraud, not having been at the time of entry the minor son of a member of the exempt classes; and that he has been found within the United States in violation of section 2, Chinese Exclusion Act of November 3, 1893, having secured admission by fraud, not having been at the time of entry a lawfully domiciled exempt returning to resume a lawfully acquired domicile and to follow an exempt pursuit in this country."

An investigation was had, Toon was ordered to be deported, and thereupon he sued out a writ of habeas corpus, which was returned before and heard by his honor, John C. Rose, United States District Judge for the District of Maryland, who affirmed the action of the Department of Labor and dismissed the writ.

The case comes to this court by appeal from this action of the District Judge.

Jackson H. Ralston, of Washington, D. C. (Harold B. Scrimger and Irvin B. Scrimger, both of Baltimore, Md., on the brief), for appellant.

Samuel K. Dennis, U. S. Atty., of Baltimore, Md. (James A. Latane, Asst. U. S. Atty., of Baltimore, Md., on the brief), for appellee.

Before PRITCHARD and WOODS, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge (after stating the facts as above). In order to dispose of the case, it will be necessary in our opinion to consider only the first assignment of error, which is as follows:

"It was an error to dismiss the writ of habeas corpus, as the petitioner is entitled to his liberty."

This brings us at once to the consideration of the proposition as to whether or not there was any evidence to sustain the action of the executive department in ordering the deportation of Toon. Referring to the facts in addition to those found upon the admission of Toon, the learned judge who heard the writ of habeas corpus made this statement:

"All that was really new in the case made at Baltimore is that, very shortly after the boy arrived in California, the alleged father sent him clear across the continent to a laundryman here. The latter's relationship, if any, to either the father or son, is, by petitioner's witnesses, variously and vaguely stated. The statements of the man in question are of such a character as to lead the immigration officials to a conclusion that he is unworthy of belief. No letters have passed between the alleged father and the petitioner, and the former does not claim to have sent for the latter's support during an entire year more than $60. At the conclusion of the hearing, the local immigration authorities decided that he should be deported."

In the investigation upon the arrival of Toon in this country, Wong, the father, and Gooey, the brother, together with Toon himself, testified that he was the son of Wong, the Oakland merchant. The inspector reported against admission on the ground that there were some inconsistencies in the statements of these three witnesses, not as to the paternity of Toon, but as to other matters, pertaining more particularly to the dwellings and locations of houses in the town in China in which these witnesses claimed to have lived; but upon a review of the case, the Department of Labor held that Toon's claim had been established, that he was the minor son of Wong, and was entitled to admission, and a certificate of identity as heretofore stated was issued. The executive authorities now claim that the admission was procured by fraud, in that Toon is not the minor son of a member of one of the exempt classes.

[1] The certificate which Toon holds must be treated, we think, as primary evidence of his right to be here, and in our opinion the executive authorities would not be justified in arbitrarily disregarding its effect. After the certificate is issued, it is our view that the burden is cast upon the government, in case a proceeding is instituted to attack it, to show by testimony which the law recognizes as evidence that it should be annulled before an order for deportation is warranted. Upon the arrival of Toon his claim to admission was investigated, and the Department solemnly adjudged that he was entitled to enter and remain. This, as we have said, cannot be arbitrarily disregarded. It is the privilege of the immigration authorities to prove, if they can,

that the certificate is invalid, and that its issue was procured by fraud; but they are not permitted to treat it as a nullity upon mere suspicion and conjecture. United States v. Chin Len, 187 Fed. 544, 109 C. C. A. 310.

[2-5] It will be observed that in the investigation in Baltimore Toon strengthened the direct testimony as to his paternity, for he not only had the sworn statements of Wong, the alleged father, his brother Gooey, and himself, the three witnesses examined upon that question on his arrival in this country, but in addition he had the sworn statements of his brother Foo, who came to this country since 1913, and also that of Lee, the laundryman. Every one of these witnesses testified under oath that Toon was the son of Wong, the merchant. Yet the circumstances, which the judge below stated were all that was new in the case, are held by the Executive Department to be sufficient to authorize a reversal of the previous adjudication in Toon's favor. Take all of the new elements brought into the case at Baltimore as stated by the court; what do they show? Simply that Toon, after remaining with the Oakland merchant for about two months, was sent to Baltimore, and took up his abode with Lee, the laundryman, and had remained there for about a year, when the investigation took place; that there was no correspondence between the alleged father and Toon during the time; and that so far as appeared the Oakland merchant had sent only $60 to Toon during the time. These are all, save the alleged inconsistencies and contradictions in the statements of Lee, the laundryman, which the court below says were of such a character as to lead the immigration officials to a conclusion that he was unworthy of belief.

It is true that the inspector states that the laundryman, Lee, told him, when he went into the laundry, that Toon was his son; but when Lee came to testify on oath he stated that the youth was the son of Wong, the Oakland merchant, and he also denied that he had told the inspector that Toon was his son. But, take it to be true that Lee made this statement to the inspector, so far as it appears here, it was only hearsay, for there is no suggestion that Toon, or any one who would feel called upon to contradict such statement, heard it. Chief Justice Marshall, in the case of Queen v. Hepburn, 11 U. S. (7 Cranch) 290, 3 L. Ed. 348, laid down the rule with regard to hearsay evidence which is generally accepted in this country, to the effect that hearsay evidence is incompetent to establish any specific fact which is susceptible of proof by witnesses who speak from their own knowledge. In commenting upon this character of testimony the Chief Justice said:

"One of these rules is that 'hearsay' evidence is in its own nature inadmissible. That this species of testimony supposes some better testimony which might be adduced in the particular case is not the sole ground of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover combine to support the rule that hearsay evidence is totally inadmissible."

There was some testimony to the effect that Toon had been at work in a laundry. Toon himself denied this, as did also Lee and the colored washerwoman who worked for Lee; but, if it be a fact that

he did some work there, it would not affect his right to remain in this country, if he was entitled to admission when he came by reason of the fact that he was a son of a merchant. Ex parte Lam Pui (D. C.) 217 Fed. 456; United States v. Yee Quong Yuen, 191 Fed. 28, 111 C. C. A. 500; United States v. Foo Duck, 172 Fed. 856, 97 C. C. A. 204.

There was some testimony in the investigation relative to the allegation that Toon had been sent to Baltimore to go to school, and that he had not attended any save the Sunday school. Wong testified that the reason that he had sent him to Baltimore to go to school was that the prejudice in California against the Chinese was such that it was not pleasant for a Chinese youth to go to school there, and it was further testified that the reason he had not attended school whilst in Baltimore was that he was not in good health. The learned judge who heard the case seems to have treated this circumstance as of no importance, because he did not mention it as constituting any part of the new matter. To this view of it we readily agree.

Brushing away, therefore, the irrelevant and inadmissible circumstances which were admitted in the case, and taking the only facts which remain, being those stated by his honor who tried the case, save the reference to Lee, the laundryman, we have as the sole basis of the Department's action three facts, to wit: That a short time after Toon's arrival in California, the alleged father sent him clear across the continent to the laundryman here (at Baltimore); that no letters have passed between the alleged father and Toon; and that the alleged father does not claim to have sent for Toon's support during the entire year more than $60.

We are not intending to hold that the weight of the evidence should govern in a case like this, for we fully recognize the law to be that the administrative officers are authorized to deport an alien whenever there is evidence to warrant such action, and the courts have not jurisdiction to interfere in such case; but it is settled by numerous decisions that the courts may supervise the action of the executive authorities in these matters and reverse their rulings when there is no evidence to sustain them.

[6] Evidence is that which furnishes or tends to furnish proof, or, as is said by Mr. Edward Livingstone, it is "that which brings to the mind a just conviction of the truth or falsehood of any substantive proposition which is asserted or denied." We take this quotation from Ex parte Lam Pui (D. C.) 217 Fed. 456. We do not think that the testimony in this case, as affecting the right of Toon to remain after a solemn adjudication that he was entitled to admission as one of an exempt class, possesses the probative value sufficient to dignify it as evidence that he perpetrated a fraud.

When a Chinaman of an exempt class enters this country, intending to remain, he is not indulging a mere privilege accorded him by us, but he is exercising a right which is guaranteed to him by international treaty and the laws of the United States. He cannot be divested of this right upon a charge of fraud unsustained by competent and relevant evidence. We reiterate that we do not find evidence of that character in this record.

It is our conclusion, therefore, that Wong Yee Toon, the appellant in this case, should have been discharged from custody, and that it was error to dismiss the writ of habeas corpus.

Reversed.

WOODS, Circuit Judge. I dissent. The appellant, Wong Yee Toon, a native of China, arrived in San Francisco in October, 1913. He claimed admission as the minor son of Wong Que Teung, a Chinese merchant of Oakland, Cal. The inspector upon investigation reported against his admission; one of his reasons being that in his opinion Toon had not proved the relationship to Teung. The law section of the Department of Labor disagreed with the inspector, and Toon was admitted in November, 1913. About two months afterwards Toon went to Baltimore to live with Won Jim Lee. In January, 1915, a warrant was issued charging Toon with being in the United States in violation of the immigration laws against admission of Chinese. Upon his arrest in Baltimore, Inspector Archibald gave him a full hearing, his counsel participating, and found the evidence sustained the charges made in the warrant. The proceedings before the inspector were first reviewed by Mr. Stump, Commissioner of Immigration, then by Hon. A. Caminetti, Commissioner General of Immigration, then by the Secretary of Labor. All agreed in the conclusion that Toon had obtained admission on the false and fraudulent pretense that he was the minor son of Teung, and that he should be deported. The entire record was then brought before Hon. J. C. Rose, District Judge, under a writ of habeas corpus. Holding that there was in the evidence abundant reason to doubt whether Toon was the son of Teung, Judge Rose dismissed the writ.

The admission of petitioner as a son of Teung, I agree, ought to be regarded prima facie evidence of his right to enter. Liu Hop Fong v. United States, 209 U. S. 453, 28 Sup. Ct. 576, 52 L. Ed. 888; Ex parte Lam Pui (D. C.) 217 Fed. 456. But the right to enter may be afterwards re-examined by the immigration officers, and their conclusion after a fair hearing, when approved by the Secretary of Labor, is final as to all issues of fact. The weight to be given to the fact of admission and all other evidence is for the executive department concerned, and not for the courts. The immigrant may, however, invoke judicial interference in his behalf on the questions of law, whether he has had a fair hearing, and whether the findings of the immigration officers against his right to remain in this country are supported by any substantial evidence. Lewis v. Frick, 233 U. S. 291, 34 Sup. Ct. 488, 58 L. Ed. 967.

It is not denied in the case before us that the hearing was fairly conducted, but it is earnestly contended that there is no substantial evidence supporting the finding that petitioner was not the son of Teung, the Chinese merchant. The evidence should be weighed by the court in view of the difficulty confronting immigration officers in the enforcement of the Exclusion Laws. Evidently the immigrant, especially a Chinaman, has great advantage of the government with respect to direct evidence. If he wishes to come in under false claims, his oath and that of his relations or friends can rarely, if ever, be

met by direct contradiction. The government will hardly ever be able to obtain direct evidence of paternity or other vital matters, and must of necessity rely on contradictions, inconsistencies, and other indirect and circumstantial evidence, if the law is to be enforced. The presumption is that immigration officers will not be arbitrary and unfair, and that they are selected for their intelligence and acquaintance with the manners and customs of the races with whose members they have to deal. They see and hear the witnesses, and may judge of their credibility by their manner and by their racial characteristics and habits. These considerations are suggestive of the greatest caution on the part of the courts in deciding that an immigrant is entitled to remain in this country, contrary to the findings of fact of the immigration officers making the examination, when the findings have been subjected to the scrutiny and have received the approval of higher officers, including the Secretary of Labor.

Here the petitioner relies on his own oath and that of his alleged father and brothers that he is the son of Teung, coupled with the fact that Teung sent $60 for his support while he was in Baltimore. On the part of the government it appears that Toon remained with the man who claimed him as a son but two months after he was admitted. Although he was a mere lad, unacquainted with conditions in this country, and suffering from chills, Teung sent him across the continent to Baltimore to be sent to school by Won Jim Lee, for the alleged reason that the climate would be better for him in his illness. Lee, according to Teung, was a distant relative. Lee represented himself at one time as Toon's father, at another as his uncle, and at another as a distant relative, and he testified that he did not know what was the relationship. No reason is given for expecting the climate of Baltimore to be better for the boy. At the time of the hearing he had been separated from his alleged father and brothers more than a year, and had had no letter or other communication from any of them.

In the application of another son, Yee Gooey, for admission, Teung gave the date of birth of his youngest son, alleged to be the petitioner, as 1897, and his name as Won Yee Chin. In this case he gave the date of Toon's birth as 1896, and his name as Won Yee Toon. There are other circumstances relied on by the inspector and commissioners, but what we have set out seems to be substantial evidence tending to disprove the claim that petitioner is a son of Teung. It is not for the court to say that the finding of the executive officers on the evidence should have been different.