## LUM MAN SHING v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit. December 3, 1928.

No. 5474.

Leslie P. Scott, of Honolulu, Hawaii, and Wilmer H. Eberly, of San Francisco, Cal., for appellant.

George J. Hatfield, U. S. Atty., and George M. Naus, Asst. U. S. Atty., both of San Francisco, Cal., and Sanford B. D. Wood, U. S. Atty., and Charles H. Hogg, Asst. U. S. Atty., both of Honolulu, Hawaii, for the United States.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. This is an appeal from an order directing the deportation of appellant, Lum Man Shing, who claims to have been born in Hawaii, where he is now domiciled. The proceeding was instituted on August 4, 1927, by an immigration inspector, who in a verified complaint charged that on or about December 13, 1920,

appellant, a person of Chinese descent, unlawfully obtained admission into the United States at the port of Honolulu "by false and fraudulent representations and claim of United States citizenship made before the immigration officials" at Honolulu. Appellant pleaded not guilty, and thereafter, upon being called as a witness for the government, he testified that his parents were Chinese, that he last came to the United States in 1920, and that he did not have a certificate of residence, but did have a certificate of identity. Thereupon such a certificate was produced by the inspector who testified that it had been received by him from appellant, apparently in connection with some investigation, the day before the prosecution was commenced. This certificate appellant thereupon offered in evidence, and the hearing was closed without any testimony by either side upon the subject of appellant's nativity, nor did the government offer any evidence that the certificate had been fraudulently or irregularly procured, or to support the charge of fraudulent entry.

The only question presented on this appeal involves the effect, by way of evidence or presumption, to be given to the certificate of identity and to the administrative proceeding culminating in its issuance and the admission of appellant into the United States.

Such a certificate is issued pursuant to rule 20 of the "Rules Governing the Admission of Chinese," promulgated by the Bureau of Immigration, Department of Labor. The rule provides that, "with a view to affording a proper and efficient means of identification to Chinese persons, or persons of Chinese descent, admitted or readmitted to the United States upon proof of their status as members of the classes specifically exempted from the excluding provisions of the Chinese exclusion laws or other applicable laws, or upon proof that they are lawfully resident laborers, or citizens of the United States by birth therein, or descent, a certificate of identity shall be issued by the official in charge at the port of entry to each such person, admitted or readmitted by him to this country, who may apply for the same. * * * *" There follow detailed directions respecting the style of the certificate, its preparation, and its contents. With other data the status as of which the holder is admitted, is to be given.

The rule further provides that, with the issuance of such a certificate, "all other certificates or papers offered by Chinese exempts, laborers, or American citizens, to establish their right of admission" shall be retained and noted as canceled by the issuing official, and if a certificate of residence is surrendered it is to be transmitted to the Bureau of Immigration for cancellation. In subdivisions 6 and 7 are directions for the filing of duplicates and the replacement of lost certificates. Subdivision 8 declares that the certificate "evidences the status of the Chinese when issued, and therefore will not be accepted as satisfactory evidence in any other connection or for any other purpose except as set forth hereafter. When issued to a person of exempt status, however, it later may be given such cumulative value as the circumstances of the case justify. When issued to a person of Chinese descent, as a United States citizen by birth or descent, the certificate will be accepted thereafter as evidence of the holder's right to reside in the United States: * * * Provided always, that fraud has not been perpetrated upon the government in securing its issuance."

Appellant's certificate is in due form and genuine. It was issued at the port of Honolulu February 11, 1921, and is signed "Richard L. Halsey, Immigration Official in Charge." Aside from immaterial recitals, it is to the effect that appellant had been regularly admitted as of the status Hawaiian born.

The case we have may therefore be thus stated: Upon a claim of citizenship, appellant sought admission to the United States at the port of Honolulu. Presumably after appropriate investigation and hearing, the administrative officers, clothed with the power and charged with the duty of determining his status, found that he was entitled to enter as a citizen of the United States. Upon such finding, and with the assurance that a certificate of identity would be accepted thereafter as evidence of his citizen status, he surrendered for cancellation such documentary evidence as he may have had and took the certificate. Seven years later, while the certificate remained uncanceled, an inspector of the department giving such assurance caused him to be arrested for deportation upon a charge that he had procured admission, and hence had obtained the certificate, by means of fraudulent representations, and without any proof or offer of proof to establish the charge he was ordered deported.

True, by section 3 of the Act of May 5, 1892 (27 Stat. 25; 8 USCA § 284), it is provided that in such a proceeding the defendant "shall be adjudged to be unlawfully within the United States unless such person shall establish, by affirmative proof, to the satisfaction [of the judge] his lawful right to remain

in the United States." But appellant here gave the court the proof which the identical governmental department which now seeks an order of deportation assured him, after a hearing and upon taking up such documents as he had to establish his right, would be "accepted thereafter as evidence of his right to reside in the United States." Some faith and credit should be accorded to the proceedings of a co-ordinate branch of the government. We are not to be understood as holding that either the determination by the administrative officers of appellant's status or the certificate thereof, constitutes res adjudicata, or for any other reason is final and conclusive; but we are of the opinion that, for the considerations shown, the certificate is sufficient to make a prima facie case of appellant's right of residence. Undoubtedly its efficacy may be wholly destroyed by showing that it was fraudulently obtained, and it may be that a record containing any substantial evidence tending to impeach its correctness, or to show that the holder's status is other that what is certified, would be sufficient to warrant deportation if, as a result of such evidence, the court is not convinced of the defendant's right to remain. But with no countervailing evidence of any character, or even an exhibit of the evidence upon which the certificate was issued, we are of the opinion that it must be accepted as making a prima facie case of such right. In Wong Yee Toon v. Stump, 233 F. 194, where such a certificate of identity was involved, the Circuit Court of Appeals of the Fourth Circuit said:

"The certificate which Toon holds must be treated, we think, as primary evidence of his right to be here, and in our opinion the executive authorities would not be justified in arbitrarily disregarding its effect. After the certificate is issued, it is our view that the burden is cast upon the government, in case a proceeding is instituted to attack it, to show by testimony which the law recognizes as evidence that it should be annulled before an order for deportation is warranted. Upon the arrival of Toon his claim to admission was investigated, and the department solemnly adjudged that he was entitled to enter and remain. This, as we have said, cannot be arbitrarily disregarded. It is the privilege of the immigration authorities to prove, if they can, that the certificate is invalid, and that its issue was procured by fraud; but they are not permitted to treat it as a nullity upon mere suspicion and conjecture. United States v. Chin Len, 187 F. 544, 109 C. C. A. 310."

And in Ng Fung Ho v. White, 266 F. 765, 770, this court said:

"The fact that the aliens were admitted into the United States, and that certificates of identity were issued to them, did not foreclose the right of the immigration authorities to institute new proceedings, provided they had sufficient reason to believe that the original findings had been founded upon evidence which was false and perjured, and that the aliens were not lawfully within the United States. In view of the fact that certificates had been issued, the burden of attack is upon the government; but, if, as in this matter, evidence sufficient to show that the original certificates were invalid has been introduced, deportation may follow. Wong Yee Toon v. Stump, 233 F. 194, 147 C. C. A. 200; Lui Hip Chin v. Plummer, 238 F. 763, 151 C. C. A. 613."

Though possibly limited, this decision was not overruled by Lee Hing v. Nagle (C. C. A.) 295 F. 642.

Reversed, with directions to take further proceedings not inconsistent herewith.