### DOO FOOK v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 16, 1921.)

No. 3530.

1. **Aliens ⬤⟞32 (5)—Burden of attack on Chinese admitted by officials may be sustained by evidence considered by officials.**

    Though the burden is on the government to attack the right of a Chinese person, who had been readmitted as a native-born citizen, to remain in the country, such burden may be sustained by the production of the evidence before the officials who admitted him, and the burden of establishing his right to remain by affirmative proof, imposed by Act May 5, 1892, § 3 (Comp. St. § 4317), is not affected by his admission.

2. **Aliens ⬤⟞32 (8)—Evidence held not to make satisfactory showing Chinese was native-born citizen.**

    Evidence on which a Chinese person was admitted into the United States as a native-born citizen, which consisted of affidavits by himself and by others conflicting with each other in important details, *held* not to show satisfactorily the right of such Chinese person to remain in the United States.

Appeal from the District Court of the United States for the District of Arizona; Maurice T. Dooling, Judge.

Deportation proceeding by the United States against Doo Fook. An order of the Commissioner of Immigration for the deportation of

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

appellant was affirmed by the District Court, and the alien appeals. Order of District Court affirmed.

George A. McGowan, of San Francisco, Cal., and Robert E. Morrison and Emmet T. Morrison, both of Prescott, Ariz., for appellant.

Thomas A. Flynn, U. S. Atty., and John H. Langston, Asst. U. S. Atty., both of Phœnix, Ariz.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. This is an appeal from the judgment and order of the United States District Court for the District of Arizona, affirming the order of deportation of the United States commissioner of Doo Fook, out of the United States to the republic of China, upon the ground that he was a Chinese laborer unlawfully within the United States and not entitled to further residence therein. The appellant, when first arrested, was accorded a hearing before a United States commissioner, who ordered his deportation, following which an appeal was taken to the United States District Court for the District of Arizona, and by stipulation of the parties the case was submitted upon the record of the hearing, with all of the original exhibits, as the same had taken place before the commissioner, and the affirming order of deportation by the United States District Court followed. From this affirming order of deportation, appellant appeals.

Doo Fook, by race, language, and color a Chinese person, arrived at the port of San Francisco from China on the steamship Peru on June 24, 1898. He claimed the right of admission as a native-born citizen. His uncle, Dea Wee Yung, as a preliminary move for such admission, had made an affidavit on February 18, 1898, in which he said that Dea (Doo) Fook, who was then in China, desired to return to the United States, and in order to facilitate his landing in the United States he made the sworn statement that Dea (Doo) Fook was his nephew; that he was born Quong Sue, third year, eleventh month, tenth day (December 14, 1877), at 744 Washington street, San Francisco, California, third floor; that said Dea (Doo) Fook was then 21 years of age; that he went to China Quong Sue, seventh year, seventh month, twenty-eighth day (August 22, 1881), on the steamship Gaelic.

Dea Yon Kee, a merchant doing business at 735½ Washington street, made an affidavit on the same day, in which he makes the statement that he corroborates all the statements made in the affidavit of Dea Wee Yung attached, concerning the nativity and birth of Dea (Doo) Fook. The affiant says he is a relative of Dea (Doo) Fook and knows positively whereof he testified.

Doo Fook arrived at the port of San Francisco, on the steamship Peru, on June 24, 1898. He was subjected to the usual examination by the custom house officials, and in support of his claim of a right to land as a citizen of the United States he submitted the affidavit of Doo Wey Young and Doo Yow Kee. The first made affidavit that Doo Fook was born at 744 Washington street, in San Francisco, in a three-story brick house; that his father, at the time of the birth of the boy, was a merchant doing business on Dupont street, and his name was Doo

We Que; that they left San Francisco for China about 16 years previously, and neither father, mother, nor child had been back since. Doo. Yow Kee made affidavit that he was a merchant doing business at 735½ Washington street, in San Francisco; that he is a first cousin of Doo Fook; that he knew he was born in the city and county of San Francisco, at 744 Washington street, in a three-story brick house, about 21 years before. On this evidence Doo Fook was landed by the collector of port on August 6, 1898; but there is no statement in the order that he was landed as a citizen of the United States. This, however, may be inferred from the evidence in support of the petitioner's right to land; that being the main question inquired into by the officials.

In September, 1904, Doo Fook, being about to depart for China upon a temporary visit, made an affidavit that he was a native-born citizen of the United States. This affidavit appears to have been made to facilitate his landing upon his return. In this affidavit he mentioned the fact of his previous arrival here and the determination of the collector of customs that he was a native-born citizen of the United States. He departed on October 1, 1904, on the steamship Gaelic. On December 18, 1905, he returned to the port of San Francisco on the steamship Korea, and again applied to be landed as a native-born citizen of the United States, as appears from the certificate of the inspector. He was landed upon the evidence introduced on the previous admission, as no new evidence appears to have been taken in support of Doo Fook's application to land. He was landed December 18, 1905, upon the order of the Commissioner of Immigration "on identification."

Doo Fook was arrested at Jerome, Ariz., July 26, 1918, on the charge of being in the United States in violation of section 6 of the Act of May 5, 1892 (27 Stat. 25), as amended by the Act of November 3, 1893 (28 Stat. 7 [Comp. St. § 4320]). Evidence was taken before the United States commissioner by the examining inspector, with respect to his right to reside in the United States. He offered as evidence his own affidavit, made in September, 1904, just prior to his departure from the United States to China, and in this affidavit Doo Fook recites his arrival in San Francisco upon the steamship Peru as June 24, 1898, and his landing on August 6, 1898, as a native-born citizen. In the examination following the submission of this affidavit, Doo Fook alleged that he was born in San Francisco, at 844 Washington street; that he left the United States with his parents K. S. 6 (1880), and accompanied them to China; that he was born in San Francisco K. S. 4322 (April 24, 1878). He says his parents told him so. He was asked what brothers and sisters his father had, and he replied that he had none; that he was sure his father never had any brothers or sisters.

In the affidavit of Dea Wee Yung, made February 18, 1898, previously referred to, he declared that Doo Fook was his nephew; that Doo Fook was born at 744 Washington street, San Francisco, December 14, 1877, and went to China August 22, 1881. The discrepancy between Dea Wee Yung's affidavit that Doo Fook was born at 744 Washington street December 14, 1877, and went to China August 22, 1881, and

Doo Fook's own testimony that he was born at 844 Washington street, April 24, 1878, and went to China in 1880, standing alone, might be explained by the fact that Doo Fook could only have known of the date of his birth, his residence in San Francisco, and the date of his first departure for China in 1880 from his parents and others, who may have given him erroneous information, while Dea Wee Yung's knowledge was first-hand, and he declared in his affidavit that "he was prepared to give the most convincing proof of the truth of his statement"; but the direct discrepancy between Dea Wee Yung's affidavit that Doo Fook was his nephew, and Doo Fook's positive testimony in 1918 that his father had no brother, is more serious, and cannot be so easily explained. He was shown a photograph of Dea Wee Yung, whom he identified as a tribal cousin, but not as a blood relative.

The commissioner held the defendant for deportation on the ground that he was unlawfully in the United States. An appeal was taken to the District Court, where the judgment of the commissioner was affirmed. The court below, upon the testimony taken before the commissioner, held that the defendant had not satisfactorily sustained the burden of establishing his right to remain in the United States. It is contended that the court arrived at this conclusion upon the erroneous assumption that the burden of establishing his right to remain in the United States was upon the defendant; that the nativity of the defendant having been submitted to the Executive Department of the government, and that department having found that he was a native-born citizen of the United States, the burden of proof was upon the government to show that he was not such a native-born citizen of the United States. In support of this contention the case of Ng Fung Ho v. White, 266 Fed. 765, is cited, where this court held that:

"The fact that the aliens were admitted into the United States, and that certificates of identity were issued to them, did not foreclose the right of the immigration authorities to institute new proceedings, provided they had sufficient reason to believe that the original findings had been founded upon evidence which was false and perjured, and that the aliens were not lawfully within the United States. In view of the fact that certificates had been issued, the burden of attack is upon the government; but if, as in this matter, evidence sufficient to show that the original certificates were invalid has been introduced, deportation may follow."

[1] In the present case we may say, as in the case just cited, that the burden of the attack is upon the government; but that does not mean that the government must in any event introduce proof to show that the defendant is not a citizen of the United States. The attack may be made upon the evidence produced on behalf of the defendant upon the hearing, and if that evidence is contradictory, or insufficient to show that the defendant was born in the United States, the court would be justified in so holding, notwithstanding the previous action of the Executive Department of the government in giving him a landing. In other words, the burden of proof placed on the defendant by the statute in a deportation case is not shifted until that proof establishes to the satisfaction of the court his lawful right to be and remain in the United States. Section 3 of the Act of May 5, 1892 (27 Stat. 25 [Comp. St. § 4317]), provides:

"That any Chinese person or person of Chinese descent arrested under the provisions of this act or the acts hereby extended shall be adjudged to be unlawfully within the United States unless such person shall establish, by affirmative proof, to the satisfaction of such ·justice, judge, or commissioner, his lawful right to remain in the United States."

We are also referred to the decision of the Supreme Court in Kwock Jan Fat v. White, 253 U. S. 454, 40 Sup. Ct. 566, 64 L. Ed. 1010, decided June 7, 1920, where the court had before it the proceedings before the Commissioner of Immigration and the Secretary of Labor in an exclusion case. The applicant, Kwock Jan Fat, applied to be admitted into the United States upon the claim of citizenship. The claim was rejected by the immigration officers, but it appears that the report of the Commissioner of Immigration contained the testimony of witnesses whose names were not disclosed, and did not contain all the testimony taken in the proceedings; that three important witnesses had definitely identified the petitioner as the son of one Kwock Tuck Lee, a citizen of the United States and a registered voter; and that this identification had been omitted from the record. The Supreme Court held that the report which contained the testimony of unnamed witnesses, and suppressed or omitted testimony that was received, was not a fair report, and a hearing based upon it was not a fair hearing, within the rule of practice indicated in Chin Yow v. U. S., 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369. The court ordered the case reversed and remanded to the District Court for trial of the merits, saying:

"It is better that many Chinese immigrants should be improperly admitted than that one natural-born citizen of the United States should be permanently excluded from his country."

We all agree to such an administration of the law, but the court does not declare a rule of evidence that gives to testimony any higher value than it has under the statute.

[2] We think that, under the law, it was clearly the duty of the defendant to make a satisfactory showing of his claim of citizenship, and that, failing to do so, he is subject to deportation.