## YOUNG MEW SONG v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
December 3, 1929.

No. 5803.

E. J. Botts and L. P. Scott, both of Honolulu, Hawaii, for appellant.

Sanford B. D. Wood, U. S. Atty., and Chas. H. Hogg, Asst. U. S. Atty., both of Honolulu, Hawaii.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge. This is an appeal from an order of deportation.

564

The appellant, Young Mew Song, was admitted into the United States May 14, 1923, as a Hawaiian-born citizen. On August 17, 1928, he was placed under arrest by a municipal police officer and turned over to the immigration authorities. The next day a complaint was filed in the United States District Court under the Chinese Exclusion Act (8 USCA § 261 et seq.), alleging that appellant was a person of Chinese descent and a Chinese laborer unlawfully within the United States, and that his entry on the 14th of May, 1923, was procured by a false and fraudulent representation. At the hearing before the District Court appellant was represented by counsel. Evidence was adduced by the government showing that the appellant was a person of Chinese descent working as a laborer at the Aala Market in Honolulu, and that he had no certificate of residence. The government thus made a prima facie case for the deportation of the appellant. 8 USCA § 284, Id., 27 Stat. 25, § 3; Tom Ung Chai v. Burnett (C. C. A.) 25 F.(2d) 574. The applicant offered no evidence whatever to dispute the prima facie case made by the immigration authorities.

█ This appeal is based upon the errors alleged to have been made by the court in the reception of certain evidence offered by the government to supplement the prima facie case made by proof that the appellant was a laborer of Chinese descent. The appellant's claim that the court erred in receiving in evidence the record of the immigration office of the testimony of one Young Kau taken November 30, 1926, wherein Young Kau admitted that he had committed perjury at the time of the admission of the appellant in 1923, at which time he testified that he was an uncle of the appellant. In 1926 Young Kau testified that he was no blood relation to appellant's father and that his information concerning the birth of the appellant was obtained from appellant's mother. The record in this testimony was offered and received without objection on the part of the appellant, but on the date to which the case had been continued for decision the case was reopened, and a motion was made to strike out this testimony which was overruled by the court and an exception noted. The testimony having been received without objection, the motion came too late, and the ruling thereon was for that reason not erroneous.

█ The next objection is to the testimony of statements made by the applicant after his arrest and before the filing of the complaint for deportation. The theory on which this evidence is objected to is that the arrest was illegal and therefore the interrogation of the appellant was in violation of his constitutional rights. The decision relied upon is that rendered by the Circuit Court of Appeals of the First Circuit in Charley Hee v. United States, 19 F.(2d) 335. Even if this evidence should be stricken out as improperly obtained, there is a complete failure on the part of the appellant to overcome the prima facie case against him, and the receipt of this evidence by the court for that reason did not prejudice him. In connection with this proposition, however, it is proper to state that not only did the testimony of the officer questioning the appellant show that the statement introduced in evidence was given voluntarily, but the statement was taken by question and answer and was expressly assented to as follows:

"Examining Inspector to Applicant:

"Q. I am an immigrant inspector in the service of the U. S. Government and desire to take a voluntary statement from you as to your right to be and remain in the United States. Will you make such voluntary statement under oath? A. Yes.

"Applicant sworn and testifies as follows through interpreter, and admonished that if at any time he does not understand interpreter to so state:

"Q. What is your true name? A. Young Mew Song. I have no other name.

"Q. You are advised that any statement you may make to me may be used against you in future criminal proceedings; do you fully understand that? A. Yes.

"Q. Have you a certificate of residence? A. No. I have a certificate of identity.

"Q. Of what race are you? A. Chinese race.

"Q. Of what race are your parents? A. Both of the Chinese race.

"Q. What is your occupation? A. I am a salesman with the K. T. Sam Hop Kee Co., at Aala Market, Honolulu.

"Q. Have you an interest in that firm? A. No. I just work there.

"Q. How long have you been working there? A. A little over a year."

Eliminating from consideration the statement taken from the appellant while under arrest, we have in the evidence the fact that at the time of the admission of the applicant in 1923, he stated that his mother was dead and had been dead for about two years, while all his witnesses at that time testified that at the time they were last in China the appellant's mother was still living. At that

time this discrepancy was noted in the proceedings for his admission as follows:

"The only discrepancy of a material nature appearing in the testimony is concerning the alleged mother of applicant, the witnesses all stating that she is living (meaning when they were last in China, from 1½ to 2½ years ago), while applicant states she is dead, first stating that she died C. R. 2, later changing to 2 years ago, and finally insisting that he and his sister have been living alone for over a year.

"Considering the testimony offered, particularly that of the alleged uncle of applicant, the identifications, and the record of death of the alleged father of applicant, I am of the opinion that the preponderance of evidence is in his favor, and therefore move that he be admitted as Hawaiian born."

The immigration records show that five Chinese boys, in addition to applicant, were allowed to enter Honolulu as Hawaiian-born children of applicant's alleged father, as follows:

Chang Chow was admitted November 15, 1922.

Wong Yen Kim was admitted June 14, 1922.

Choy Say Leong was admitted May 18, 1923.

Loui Kin Wai was admitted November 30, 1923.

Go Yau Kin was admitted January 9, 1924.

At the time of his admission, May 14, 1923, appellant was not asked concerning his brothers and sisters. He was asked, however, what persons there were in Honolulu with whom he was acquainted or who knew him, and he neglected to mention the two alleged brothers, Chang Chow and Wong Yen Kim who had been admitted in 1922, and the brother Choy Say Leong who was admitted four days later than appellant, May 18, 1923. The evidence would clearly indicate that his entry had been fraudulently obtained. The most significant points in the statement made by the appellant at the time of his arrest and before the filing of the complaint was that Young Kau was really his uncle, although, as we have seen, Young Kau admitted that that statement was false and appellant's further statements that he had no brothers and that his mother was living and that he had received a letter from her within a couple of months, although at the time of his admission in 1923, as above stated, he insisted that his mother was dead. It is unnecessary to determine whether or not this statement was properly received, for no effort was made by the appellant to meet the prima facie case made by the government before this evidence was introduced.

Judgment affirmed.