**WONG HAI SING v. NAGLE, Commissioner of Immigration.**

No. 6290.

Circuit Court of Appeals, Ninth Circuit.

March 9, 1931.

Jos. P. Fallon, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and William A. O'Brien, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before RUDKIN, WILBUR, and SAW-TELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from the order of the District Court for the Northern District of California, Southern Division, discharging the writ of habeas corpus and remanding Wong Ho Shee, alleged wife of Wong Hai Sing, to the custody of the appellee for deportation.

Wong Ho Shee, a Chinese woman, made application on October 2, 1929, to enter the United States as the wife of Wong Hai Sing, a resident Chinese merchant. A board of Special Inquiry was convened by the Commissioner of Immigration for the Port of San Francisco to hear and determine the application, and as a result of the hearing the Board found that the evidence submitted failed to establish satisfactorily that the applicant was the lawful wife of Wong Hai Sing and that the claimed relationship did not exist.

An appeal was taken to the Secretary of Labor with the result that the decision of the Board of Special Inquiry was affirmed. Thereupon Wong Ho Shee was ordered excluded and deported to China, and, in order that her deportation would be effected, the appellee is holding her in custody. Upon the hearing of the order to show cause, it developed that certain documentary evidence evidencing the marriage had not been present-ed to the Department of Labor for its consideration at the time its decision was rendered. The court thereupon on January 24, 1930, granted the writ of habeas corpus, remanded the case to the immigration authorities for a rehearing, and directed that the additional final record be incorporated in the final return to the writ. A rehearing was held at Angel Island, and the applicant again denied admission. The matter was resubmitted to the Secretary of Labor, with the result that the detained was again excluded and ordered deported. On May 8, 1930, the court, as above stated, entered an order discharging the writ and remanding petitioner to the custody of appellee.

The appellant contends that the excluding decision is not supported by the evidence. In cases of this character, the Immigration Service has the power to find facts, and the orders based on their findings must be accepted by the courts, unless it be clearly shown that there was a denial of a fair hearing, that the finding was not supported by any substantial evidence, or that there was an application of an erroneous rule of law. Ng Fung Ho v. White, 259 U. S. 276, 42 S. Ct. 492, 66 L. Ed. 938. There is no evidence in the record to show that any of these errors entered into the hearings in this case. The immigration officials, the Special Board of Inquiry, and the Secretary of Labor have based their orders of exclusion on the development of discrepancies in the testimony of the appellant and his alleged wife which they hold are conclusive that the stated relationship does not exist.

The courts have held that in long and involved cross-examination of several persons covering the minutiæ of daily life, discrepancies are bound to develop and are inconclusive with regard to the testimony as a whole when they are on minor points. There are many discrepancies of that nature in the case here presented, details which of themselves would not be sufficient to justify the exclusion order of the Board: the exact hour and length of time of the first visit of Wong Hai Sing to the home of his alleged wife; whether or not the bride's house was rented or had been in her family for several generations; whether the mother of Wong Ho Shee had bound or unbound feet; whether the mother or the daughter was taller; and the exact time when the appellant made presents of jewelry to Wong Ho Shee. These are details upon which people might err very easily, and do not per se prove a deliberate attempt at falsification.

There are other factors, however, which must be given more weight. In the case of a marriage of this sort, where everything is arranged for the girl and nothing is left to her discretion, is it not likely that she would be doubly curious as to all the details preceding and during the ceremony of marriage itself, and the whole affair would assume a heightened importance in her eyes? If we are to accept the character references with regard to the appellant, then we must give credence to his statement of the facts as they took place, and there should be a substantial accord in the testimony of the two. Marriage in such cases becomes an event so much out of the ordinary that every detail connected therewith is given a greater importance and so is likely to be more readily remembered by the woman in the case.

The appellant says that on his first visit to the home of Wong Ho Shee she remained in the room during the entire time and was asked by her mother if she were willing to marry him; Wong Ho Shee herself says that she did not remain in the room and that her mother asked her that night if she would be willing to marry Wong Hai Sing. It seems hard to believe that a young woman would not remember whether or not her proposed husband was in the room when the proposal of marriage was made. As she had never seen him before, it is unlikely that such a meeting would be without interest and that she would not remember the proposal. The details of the wedding ceremony itself are of importance and must have made an impression upon one to whom marriage would be the outstanding event of her life. Appellant states there were present at the ceremony Wong Ho Shee, her mother, her father, himself, and four other men, that the marriage ceremony consisted of "some food such as pork and chicken were arranged on the table with some burning candles, before which I made obeisance and the bride followed me in that ceremony."

Wong Ho Shee testifies that there were present at the ceremony only herself, her parents, her alleged husband, a Chin family man, and another whose name she did not know, that there were six persons in all, that there was a table with candies that she had brought from home, that the room was lighted by electricity and there were no candles burning, and that "no one officiated. Upon my arrival there I made a bow to this Chin family man, one to my father and one to my husband, and that concluded the marriage ceremony."

Again, appellant testified that his alleged mother-in-law accompanied them to Hongkong, stayed with them there for eight weeks, and saw them to the door of their stateroom on the steamer when they sailed for the United States. Wong Ho Shee testified that her mother remained with them in Hongkong only two days, and then returned to her home in Gong Moon City, that she bade her mother good-bye at the street entrance to the building on that occasion, and that she had not seen her mother since. It is hardly conceivable that a young woman of 20, going to a strange country from which she might or might not return, would forget or make a mistake as to whether or not her mother came to the boat to see her off on that occasion. Here the testimony is so contradictory as to be irreconcilable under any theory and is strongly prejudicial to the validity of the whole testimony of the applicant. There might be some reason for discrepancies, even in such important and essential details, if the hearing had taken place years after the alleged marriage, but the fact that the first hearing took place only three months after the alleged marriage precludes that possibility of extenuating circumstances.

A few days prior to the first hearing in the case of Wong Ho Shee, the appellant sent her a letter written as though to his wife, in which he said, "Be sure to remember the testimony so as to avoid any mistakes at the hearing."

Appellant states in his brief that he questions the exactness of the translation, but there is nothing in the record to show that he took exception to the language thereof in the course of the proceedings. The language of the letter seems to make it more than mere friendly advice and to contain a definite reference to a prearranged set of answers to questions that might be propounded. Again the fact that only three months had elapsed since the events on which she would be questioned had occurred makes the admonition seem unnecessary if the reference was to events that had actually taken place.

The question of authenticity of the "three generation papers" introduced in evidence to prove the legality of the alleged marriage has arisen. The immigration officials found that these papers could not be accepted as conclusive proof of the marriage of the appellant and Wong Ho Shee, inasmuch as the documents seem to have been written by the same person, they are in the names of and signed by the parties themselves instead of by their relatives, as is the more usual Chi-

nese custom, and there is a conflict in the testimony as to whether the bride received her papers from her father at the time of the alleged ceremony or from her mother three days later. The record seems to justify these findings.

Much has been made of the letter to Wong Hai Sing from his alleged father-in-law which purported to have been written on November 22, 1929, whereas the envelope in which Wong Hai Sing said that it had come was postmarked September 13, 1929, nearly three weeks before the appellant arrived in the United States. When confronted with this fact, the appellant gave a long and involved explanation which contradicted his former statement that the envelope had been continuously in his possession since it was handed to him by Chin Din Lau to whom it had been forwarded. This explanation is not necessarily false, but its nature tends to discredit the appellant's testimony and to be harmful in effect to his contentions.

These discrepancies must be given the greatest possible weight, and are evidence that the immigration officials did not act arbitrarily in refusing the application of Wong Ho Shee for admission to the United States, and consequently must be upheld by the courts.

Appellant contends also that the lower court erred in not trying the case on its merits after it had issued the writ of habeas corpus and after taking jurisdiction thereof. When a question of citizenship is involved, the District Court may properly undertake to determine the alien's right to enter the country, but it does not follow as here that, where citizenship is not claimed, the alien is entitled to have the District Court determine his right of admission. The District Court should not assume the duties of the immigration officials without due cause, and, although the court should and will determine whether the applicant for admission has had a fair hearing, the final question of factual interpretation should rest with the latter officials, who are better qualified therefor. The case of Tod v. Waldman, 266 U. S. 113, 45 S. Ct. 85, 69 L. Ed. 195, has settled the question, for there the Supreme Court has directly held that, where an alien has been denied the right of a proper appeal to the Secretary of Labor, the order should be that the matter be remanded to the Immigration Service in order that such an appeal may be allowed. See, also, White v. Wong Quen Luck, 243 F. 547 (C. C. A. 9th). In the case at bar there had been an appeal, but it was not complete, in that the record did not contain the "three generation papers" presented by the applicant to sustain her claim. The District Court acted rightly in remanding the matter to the immigration officials for their further action.

We find here no error, and the judgment of the lower court is affirmed.