**FONG LUM KWAI v. UNITED STATES.**

No. 6203.

Circuit Court of Appeals, Ninth Circuit.

April 13, 1931.

Charles B. Dwight, of Honolulu, Hawaii, for appellant.

Sanford B. D. Wood, U. S. Atty., and John Albert Matthewman, Asst. U. S. Atty., both of Honolulu, Hawaii, and George J. Hatfield, U. S. Atty., and I. M. Peckham, Asst. U. S. Atty., both of San Francisco, Cal.

Before RUDKIN, WILBUR, and SAW-TELLE, Circuit Judges.

WILBUR, Circuit Judge.

The appellant, having been ordered deported by the United States District Court for the Territory of Hawaii, appeals from the order of deportation. Appellant was admitted to Hawaii on November 14, 1923, as the Hawaiian born son of a Chinese citizen, after consideration of his application for entry and application for his certificate of identity. The certificate requested was not issued, but notwithstanding that fact the proceedings upon his entry established prima facie his right to remain. Choy Yuen Chan v. U. S. (C. C. A.) 30 F.(2d) 516; Leong Kwai Yin v. U. S. (C. C. A.) 31 F.(2d) 738.

On November 17, 1928, an immigration inspector from the United States Immigration Service requested appellant to show his certificate of residence, and after ascertaining that he had no such certificate took him to the immigration office, and, with appellant's consent expressly given, examined him upon the state of facts testified to by him upon his admission five years previously. His testimony was substantially the same as that given upon his entry. Thereafter two of the witnesses who had testified at the time of applicant's entry were called into the office and re-examined upon the matters to which they testified upon appellant's entry. Thereafter this proceeding for the deportation of applicant was inaugurated in the District Court by filing a complaint on November 17, 1928, alleging: " * * * That said Fong Lum Kwai, alias Fong Kock Tung, on or about the 14th day of November, 1923, did unlawfully obtain admission into the United States at the port of Honolulu by false and fraudulent representations and claim of United States citizenship made before the Immigration Officials at the port of Honolulu; and that the said Fong Lum Kwai, alias Fong Kock Tung, is not lawfully entitled to be or remain in the United States, in violation of the acts of Congress in such case made and provided."

Appellant entered a plea of not guilty. Upon the trial the immigration inspector tes-

tified that no certificate of residence or of identity had been issued to the appellant. It also appeared that the appellant was a laborer of Chinese descent. On cross-examination of the government inspector it was established that the appellant was admitted by Special Board of Inquiry, and on redirect examination the government produced its record showing such admission, which was introduced in evidence. At this stage of the proceeding the right of the appellant to remain in Hawaii was established. The government was desirous of overcoming this prima facie showing by the introduction of the record of the examination of the witnesses who had been called before the immigration authorities in 1928. It was held by the court that the transcript of this evidence was not admissible. The government was relying upon discrepancies between the testimony of the witnesses given at the time of entry in 1923 and statements made by the same witnesses in 1928, but, this testimony having been excluded by the court, the district attorney was at a loss as to how to get this evidence before the court. If he called the witnesses he could not do so for the mere purpose of impeaching their testimony by contradictory statements and he was evidently fearful that upon the trial they would confirm their original testimony. And subsequent developments justified this fear. In this situation the judge decided that he would call the witnesses and question them and allow the attorneys for both sides to cross-examine. Upon the direct examination these witnesses confirmed and reiterated the testimony given by them in 1923. It was so stated in the opinion of the trial court, from which we quote as follows:

"Lau Yai and Fong Yick in their testimony given before this Court adhered so closely to the evidence given by them in 1923 that their testimony in the present trial and that given in 1923 (Exhibit 'A') is held to be practically identical. * * *

"There was admitted in evidence in this case as Exhibit 'A' the record of defendant's application for original admission at the Port of Honolulu in 1923, containing defendant's testimony and that of Fong Yick, Lau Yai and Lau Tung Yat, his three witnesses. The testimony of Fong Yick and Lau Yai at the present trial was practically identical with their 1923 testimony. The value of Lau Tung Yat as a witness has not been directly attacked, as the record shows that he has been throughout unavailable as a witness, his whereabouts being unknown and every inti-

mation existing that he left the Territory several years ago."

With reference to the testimony of the appellant the court made the following statement: "The Government's case having closed, the defendant elected not to take the stand and subsequently the court of its own motion called the defendant to the stand, where he gave evidence practically identical with the evidence he had given in 1923, gave an explanation of one minor discrepancy in the 1923 statement, and denied making a certain statement in 1928 (inconsistent with his testimony in 1923 and at the pending hearing), and upon this denial the court put in evidence defendant's 1928 statement as Exhibit 'D.' "

We quote these excerpts from the opinion of the trial judge as a convenient way of calling attention to the facts as shown by the evidence. At this juncture it will be noted that the witnesses called, not only failed to establish fraud in the proceedings for the entry of appellant, but also again testified to the same facts upon which he had been originally admitted and which tended to establish the claim of the appellant that he was born in Hawaii. Instead of showing fraud in the original entry of the appellant, the proceedings thus far tended to establish that there was no fraud whatever. In this dilemma the trial court "admitted these 1928 statements of Fong Yick and Lau Yai as Exhibits 'B' and 'C,' " and "put in evidence defendant's 1928 statement as Exhibit 'D.' " It is a fundamental rule of evidence that a party cannot call a witness for the sole purpose of impeaching him by inconsistent statements alleged to have been made by the witness. Hickory v. U. S., 151 U. S. 308, 309, 14 S. Ct. 334, 38 L. Ed. 170; Cyc. Fed. Proc., vol. 2, § 527. The only instances in which a party is permitted to introduce conflicting statements to destroy the probative effect of the testimony of a witness introduced by him is where he claims that he had been surprised by the adverse testimony of his witness and offers the conflicting statements to justify calling the witness and to eliminate, as far as possible, the effect of his adverse testimony. Murray v. Third Nat. Bank (C. C. A.) 234 F. 481.

The purpose of this rule is to protect the party against a fraud perpetrated on him by a witness, and the utmost effect of the adverse statements is to eliminate the testimony of the witness. Upon an analysis of the discrepancies between the testimony of the witnesses who had been offered in support of appellant's application in 1923 and the same tes-

timony reaffirmed in 1929 upon the trial of this case with the alleged discrepancies in the statements of these witnesses before the immigration authorities in 1928, the court arrived at the conclusion that the witnesses were unworthy of credit upon the trial because their evidence upon the trial varied from the statements made in 1928. It is, therefore, deduced as a conclusion that they were unworthy of credit in 1923, and consequently it is decided that appellant's entry into the United States was fraudulently obtained.

Up to this juncture it will be observed that there was no affirmative evidence whatever of fraud. There is no evidence that the appellant was born in any other place than Hawaii, no evidence that his father was not a resident and citizen of Hawaii, no evidence that his mother was not also a resident of Hawaii. Indeed, the testimony of the witnesses examined as given in 1923 and in 1929 at the trial, and their statements before the immigration authorities in 1928, were, not only entirely consistent with the appellant's claim of citizenship, but tended to support that claim.

Over the objection of the appellant, records of the immigration authorities were admitted which tended to establish that five other Chinese had been admitted in Hawaii as having been born to Ng She at the place and about the time of the birth of the appellant. These records were not incorporated in the transcript in their entirety, but it appears therefrom that Lee Kam Yau was admitted in 1922 as the son of Lee Hook Sing, alias Lee Yai Ngip, and mother Ng She, who died December 6, 1899, in Hawaii, and whose remains were sent back to China. Lau Kwai Yin made the same statements about his mother. Siu Quan Leong, who was admitted January 25, 1923, gave the same facts concerning his mother. Lau Sam Kau, admitted August 9, 1923, gave the same facts concerning his mother.

In considering the propriety of the admission of this evidence and its effect in the case at bar, it should be stated that the court recognized that the appellant should not be penalized because of the fraud perpetrated by others (Leong Kim Wai v. Burnett [C. C. A.] 23 F.[2d] 789), but held the evidence admissible to be considered among other facts and circumstances in the case, "and the fact that apparently not less than six Chinese having been admitted as the sons of Ng She, who had, according to this defendant, only two sons, is a circumstance of some significance to be considered with all the other circum-

stances as bearing upon the claim of right by the defendant to remain in the country." The court also stated: "It is a fact of which this court takes notice (and of which notice has heretofore been taken by the Ninth Circuit Court of Appeals) that during the incumbency of a former immigration inspector for the Port of Honolulu, 'the administration of the immigration laws in this territory * * * was extremely lax'. Leong Kim Wai v. Burnett [C. C. A.] 23 F.(2d) 789; Lee Sai Ying v. U. S. [C. C. A.] 29 F.(2d) 108; Leong Kwai v. U. S., supra. Many scores of certificates were fraudulently issued in Honolulu during the period from 1921 to 1924. And while it is true that, in any concrete case, the mere fact that numerous fraudulent entries have been made by persons other than the defendant cannot justify the exclusion of a particular defendant, nevertheless the value of any certificates issued—or any ruling admitting Chinese—during the regime just referred to is correspondingly slight and, as a matter of common sense, it cannot require as much evidence to rebut the prima facie right growing out of these certificates of identity (or rulings admitting Chinese) as would be the case in other jurisdictions under different circumstances."

It is apparent that the trial court was of the opinion that the weight of the prima facie presumption of the favorable decision by the Special Board of Inquiry at the time of the admission was to be determined in part by the evidence that such Board had connived at fraud, evidence of such connivance being proved by specific instances of such fraud, together with judicial notice that such frauds were perpetrated. It is undoubtedly true that, where a trial judge is properly advised of the fact that the immigration authorities had connived with applicants for admission to admit as citizens persons who were not entitled to admission, it would tend to destroy the probative value of the findings of the Board, but to say that the court will take judicial notice of such fraud and upon such notice assume the probabilities to be in favor of the falsity of the Board's findings rather than in favor of its validity is in effect to destroy its probative value, and to reverse the rule heretofore established that the findings of the Special Board are prima facie evidence of the right of the defendant. Nor do we think that a court is justified in taking judicial notice of such alleged fraud. It has been referred to in the opinions of this court, but such statements were based upon frequent presentation of such cases and in no instance

upon judicial notice. If it is a fact that six Chinese persons were allowed to enter Hawaii upon proof that they were the sons of a single mother and all born about the same time, the mother having died shortly after the alleged birth, it would tend to discredit the Board of Special Inquiry and its findings. The question here, however, is, Were the records of the immigration authorities properly admitted over the objection of the appellant? He was not a party to these records so far as appears herein, he had nothing whatever to do with them and no knowledge of them. It is not even claimed that he was aware of the existence of these records or of the individuals who were allowed to enter thereon. They tend to impeach the perspicacity of the Special Board, but, in the absence of some evidence connecting the appellant therewith, the testimony as to him was incompetent. The government could not sustain the burden of showing fraud by the introduction of incompetent evidence nor by invoking judicial notice of misconduct on the part of the Special Board at about the time of the admission of the appellant. If these records were improperly admitted, and if the court was not justified in taking judicial notice of fraudulent misconduct on the part of the Special Board, nothing remains in this case to oppose the prima facie presumption of citizenship resulting from appellant's admission by the Special Board other than some inconsistent statements made by appellant's witnesses at a time when they were not under oath and had been called for examination without notice, as to statements made and information gathered some five years before in which they were not particularly interested and as to which they had had no opportunity to refresh their memory. It is sufficient to say of such discrepancies that however much they may provoke suspicion they prove nothing. None of these witnesses admits that he testified falsely or that he had been requested so to do. The utmost extent of their admissions is that, in so far as their statements were inaccurate, they were due to a lapse of memory. The trial court was undoubtedly justified in inferring that they had refreshed their memories by examining the records of their original testimony. It is probably true that their testimony given on the trial favorable to the appellant resulted from their examining the record of their testimony given five years previously. This, however, proves nothing. If we assume that they had no right to refresh their memory, a right which is uniformly accorded to all witnesses, the fact that they did so establishes nothing, and leaves the case of the appellant supported at least by the prima facie proof of his right to be in Hawaii.

Perhaps it should be said in addition that statements of witnesses taken in 1928 were inconsistent with their statements made in 1923. For instance, one witness who had testified in 1923 that appellant was the son of a certain man, was unable in 1928 to name the father, but on the trial he did so. Another witness testified that he had learned of the birth of the appellant in Hawaii by the statement furnished by appellant's mother. In 1923 he had given the name of his informant as appellant's father and upon the trial he also gave the name of appellant's father and it was, of course, conceded that the mother was dead at the time the witness fixed as having received the information. It may be said that this case narrows itself down to the question of whether or not the government can overcome the prima facie presumption established by evidence of the findings of the Board by merely showing that some of the witnesses who testified at that time had subsequently made statements inconsistent with their testimony. This, we think, cannot be done. In Wong Yee Toon v. Stump, 233 F. 194, 196, by the Circuit Court of Appeals of the Fourth Circuit, it is said: "After the certificate [of identity] is issued, it is our view that the burden is cast upon the government, in case a proceeding is instituted to attack it, to show by testimony which the law recognizes as evidence that it should be annulled before an order for deportation is warranted."

This was cited with approval in our decision in Lum Man Shing v. U. S., 29 F.(2d) 500, 502, where this court held that the certificate of identity issued under rule 20 of the Rules of Immigration, Department of Labor, to a Chinese person who had entered the Hawaiian Islands at Honolulu, was sufficient prima face proof to establish the right of the holder to remain in the United States, the court stating: "* * * The certificate is sufficient to make a prima facie case of appellant's right of residence. Undoubtedly its efficacy may be wholly destroyed by showing that it was fraudulently obtained, and it may be that a record containing any substantial evidence tending to impeach its correctness, or to show that the holder's status is other than what is certified, would be sufficient to warrant deportation if, as a result of such evidence, the court is not convinced of the defendant's right to remain."

In Choy Yuen Chan v. U. S. (C. C. A.) 30 F.(2d) 516, 517, supra, it was held that the favorable decision of the Board of Special Inquiry at the time of entry was also prima facie evidence of the right of the person so entering to remain. It was evidently the view of the court that the finding of the Board of Special Inquiry, which should have been followed by the issuance of the certificate of identity, was the equivalent thereof in a proceeding for the deportation of the person thus entering. In that case, quoting from the Japanese Immigrant Case, 189 U. S. 86, 23 S. Ct. 611, 47 L. Ed. 721, it was stated: "And in such a case, as in all others, in which a statute gives a discretionary power to an officer, to be exercised by him upon his own opinion of certain facts, he is made the sole and exclusive judge of the existence of those facts, and no other tribunal, unless expressly authorized by law to do so, is at liberty to re-examine or controvert the sufficiency of the evidence on which he acted."

Upon the authority of the Japanese Immigrant Case, supra, and Martin v. Mott, 12 Wheat. 19, 31, 6 L. Ed. 537, it was held that the decision of the Board of Special Inquiry was prima facie correct, and was sufficient to establish his right to remain in the United States, " * * * in the absence of a charge that he has committed some act which justifies his deportation, or some affirmative proof upon the part of the government that he obtained admission fraudulently."

In the Choy Yuen Chan Case, as in this, it was claimed that there was fraud in the determination of the Board of Special Inquiry because a witness, who had testified for the appellant upon his entry in the proceedings for deportation, upon being produced by the government and examined and cross-examined, developed some discrepancies between his former testimony and the testimony upon the deportation proceeding. Of this the court there said: "But such discrepancies in the testimony of a witness produced by the government to prove its own case were insufficient to prove that the appellant obtained admission to the United States by fraudulent misrepresentation, or that he was not born in Hawaii, and were insufficient to overcome the prima facie presumption created by the finding of the Board of Special Inquiry."

This decision is authority for the proposition that the mere development of discrepancies on the part of the witnesses summoned by the government is insufficient to overcome the prima facie presumption which arises from the finding of the Board of Special Inquiry. This must be true, for the reasons we have herein stated, that at most such discrepancies would merely tend to nullify the affirmative testimony of the witnesses given in the deportation proceedings.

In Leong Kwai Yin v. U. S. (C. C. A.) 31 F.(2d) 738, 739, the cases of Lum Man Shing v. U. S. (C. C. A.) 29 F.(2d) 500, supra, and Choy Yuen Chan v. U. S. (C. C. A.) 30 F.(2d) 516, supra, were followed by this court in an appeal from a deportation order made by the District Court of the Territory of Hawaii. The only evidence offered to rebut the effect of the decision of the Board of Special Inquiry admitted in the Leong Kwai Yin Case, supra, was evidence that thirteen other children had been admitted as children of the same parents, whereas apparently these parents had only two children. It was held that this evidence was insufficient to rebut the presumption that he had a right to remain in the United States. It is said: "The decision of the Board of Special Inquiry, admitting the appellant, and his certificate of identity, are in nowise impeached for either fraud or error, and, if this appellant may be deported on such a record, there is no reason why every other Chinese person admitted to the territory during the same period, because of his Hawaiian birth, may not be deported because of the laxity of the administration of the law, and for no other reason. In such a view we cannot concur."

The only distinction between the case at bar and the above cases is that, while in the Choy Yuen Chan Case discrepancies subsequently developed were held insufficient to rebut the prima facie presumption arising from the decision of the Board of Special Inquiry, and in Leong Kwai Yin v. United States, supra, evidence of other findings of the same Board of Special Inquiry in other proceedings for the entry of other Chinese inconsistent with the finding in the case of the applicant whose case is under consideration for deportation, were also held insufficient to rebut that presumption; in this case we have evidence of both discrepancies and of other entries which may have been fraudulent; but as neither one nor the other alone is sufficient to overcome the presumption, because neither the one nor the other tends to establish fraud, so in the case at bar the sum of the two is equally ineffectual. Moreover, as we have said, in the case at bar evidence of such other decisions by the Board of Special Inquiry admitting other Chinese was objected to as

incompetent, and this objection should have been sustained. In this connection it should be stated, perhaps, that in the case of Young Mew Song v. U. S. (C. C. A.) 36 F.(2d) 563, cited by the trial court in its decision in this case, a similar situation to that involved in the case at bar was considered by us, but there appellant made no claim as to the effect of the proceedings at the time of his entry as prima facie evidence. There also it appeared that one of the witnesses who had testified at the time the applicant was admitted thereafter admitted that he had committed perjury in his testimony.

There was no evidence in this record to overcome the presumption arising from the findings of the Board of Special Inquiry.

Appellee cites Ng Fung Ho. v. White (C. C. A.) 266 F. 765, which was subsequently considered by the Supreme Court, Id., 259 U. S. 276, 42 S. Ct. 492, 66 L. Ed. 938, and reversed in part. He also cites our decision in Doo Fook v. U. S. (C. C. A.) 272 F. 860. In so far as the latter decision holds that the burden of proof imposed on the defendant by statute in a deportation case to show his right to remain in the United States is not shifted to the Government until the proof adduced on behalf of the defendant upon the hearing for his admission into the United States "satisfies the court of his lawful right to be and remain in the United States," it must be held to have been overruled by the latter decisions above cited (Lum Man Shing v. U. S. [C. C. A.] 29 F.[2d] 500; Choy Yuen Chan v. U. S. [C. C. A.] 30 F.[2d] 516; Leong Kwai Yin v. U. S. [C. C. A.] 31 F.[2d] 738), for, as there held, the evidence adduced at the time of admission is for the information of the Board of Special Inquiry. It is their action thereon that raises the presumption in favor of the defendant. This is true, regardless of the insufficiency of the evidence to sustain its action. Without any exception in the cases brought to our attention the proof presented by the applicant, if believed, has been sufficient to establish the right of the applicant to enter where that right has been based on a claim of citizenship as in the case at bar.

The case of Lee Hing v. Nagle (C. C. A.) 295 F. 642, was one dealing with the exclusion of an alien who claimed to be a citizen, and not with the deportation of a resident who claimed to be a citizen. None of these cases support the judgment of deportation.

Judgment reversed.