## WONG KAM CHONG v. UNITED STATES.
### No. 9325.

Circuit Court of Appeals, Ninth Circuit.
May 2, 1940.

E. J. Botts, of Honolulu, T. H., for appellant.

Ingram M. Steinback, U. S. Atty., and John E. Parks, Asst. U. S. Atty., both of Honolulu, T. H., and Frank J. Hennessy, U. S. Atty., and Louis R. Mercado, Jr., Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

Appellant, a Chinese person, was arrested, "found and adjudged to be one not lawfully entitled to be or remain in the United States" and ordered to be "removed from the United States to the country whence he came", pursuant to 8 U.S.C.A. § 282. He appeals from the judgment to that effect.

On December 17, 1900, there was recorded in the Bureau of Vital Statistics of the Territory of Hawaii a record of the birth on March 1, 1900 of "Kam Chong Wong" to "Wong Kai Sing", father, and "Sen See", mother, in Palama, Honolulu, Territory of Hawaii.

Wong Kam Chong, the appellant, in 1922, being then in Hawaii, applied for a Certificate of Hawaiian birth before departing for the mainland of the United States. On September 18, 1922, he testified in answer to the questions of an Immigration Inspector, that his name was "Wong Kam Chong"; that he was born in Palama, Honolulu, Territory of Hawaii, on December 17, 1900; that his father's name was "Wong Kwai Sam"; that his mother's name was "Sin She"; that his father died in 1908; that his mother died in 1903; and that his father's friend, Chun Wah Bun "took care of" him after his father's death. Appellant presented a certified copy of the above-mentioned record of birth, and also two witnesses who were Chun Wah Bun and Chong Chung also called Chang Hing Tai. The latter testified that he lived near the place where appellant was born, and knew appellant during the first five years of his life. "Chun Wah Pan" testified on September 22, 1922, that he had known appellant since he was born; that he saw him when he was a baby, and when he was about 7 or 8 years old; and that appellant lived with him after appellant's father's death. On September 27, 1922, a "Certificate Of Hawaiian Birth" was issued to appellant.

On April 10, 1923, appellant, on his return from the mainland, was admitted into the Territory of Hawaii as "Hawaiian born" and was given a "Certificate Of Identity" dated April 12, 1923.

On January 26, 1929, appellant presented to the Immigration Service, his Certificate Of Identity for endorsement prior to a second trip to the mainland. His testimony then given, agreed with the testimony given in 1923, except that he gave as his father's name "Wong Kwai Sam", and except as to the date of his birth, concerning which he testified:

"A. I am 29 years old born on March 1, 1900. There was a mistake in my statement before when I said I was born on December 17, 1900. I was really born March 1, 1900.

"Q. How did you happen to make that mistake before? A. On December 17th I was reported to the Board of Health but I was born on March 1st."

He also testified that neither of his parents returned to China after his birth.

Appellant did not go to the mainland, but departed for China on October 16, 1930. He returned on January 29, 1931, and was admitted into the Territory of Hawaii.

Appellant was questioned on December 18, 1933, in connection with his application for a Certificate of Citizenship. He then testified that he was born on March 1, 1900; that his name was Wong Kam Chong, also known as Chung Wong; that his father was named Wong Kwai Sun, who died "over" twenty years prior to that time; that his mother, Sin Shee, predeceased his father by five years; and that he expected to depart for China on January 5, 1933. On December 22, 1933, there was issued to appellant a "Certificate of Citizenship".

On November 10, 1938, appellant appeared as a witness for another applicant. He testified that his name was Wong Kam Chong, and that he had no other names and that he was born on March 1, 1900. He was then unable to remember his father's name and the examination was postponed until November 12, 1938, because of appellant's intoxication. On that day he testified that his name was Wong Kam Chong and that he had no other name; that he was born on March 1, 1900; that the birth certificate he had previously presented was his; that his father, Wong Kwai Sing had died about 30 years previously. He further testified as follows:

"Q. Describe your mother? A. Siu Shee, she went to China at the time my father's remains were sent to China and is now living in China but I don't know where.

"Q. How old is your mother? A. She is over sixty years old now.

"Q. Why don't you know where she is living in China? A. I don't know the address of my mother.

"Q. Did you live with your mother until she went to China about ten years ago? A. I meant that my mother's remains were disinterred and sent to China at the same time my father's were.

"Q. Is your mother living? A. No.

"Q. When and where did she die? A. She died in Honolulu when I was three years old.

"Q. Where was she buried? A. In the same place where my father was buried here.

"Q. How old was your mother when she died? A. Slightly over thirty years old.

"Q. Did you visit her grave? A. Yes, when I was quite young.

"Q. Why didn't you visit her grave up until ten years ago? A. Because I didn't remember where her grave was located.

"Q. Were your father's grave and your mother's grave together or far apart? A. Far apart."

On April 27, 1939, the complaint herein was filed. The testimony related above as contained in the immigration office was introduced into evidence. For appellee, Wong Chan, also known as Wong Kam Chong, Wong Kam Chang and Wong Kim Chang, testified that his father was Wong Kai Sing, also known as Wong Kwai Sing, and that sometimes "Sing" was spelled "Sang"; that his mother's name was Seu See or Sui See; that both his parents were living; that he possessed a copy of birth certificate which was introduced into evidence · and which contained the same information as the one produced by appellant in 1922; and that such copy had always been considered by him and his family as a record of his birth.

The Registrar General of births, deaths, and marriages in the territory testified that the copy of birth certificate presented by appellant, and the copy of birth certificate presented by the witness Wong Chan, were taken from the same record. Wong Kai Sing then testified that Wong Chan was his son, and that the copy of birth certificate presented by his son, was a record of his son's birth. Wong Siu Shee then testified that Wong Chan was her son, and that appellant was not one of her sons.

The Clerk of the Supreme Court of the Territory of Hawaii testified that while he did not know where appellant was born, he believed appellant was the same person he had known since he [appellant] was three or four years old. Fong On testified that appellant's father was Wong Kwai Sung, and that he had known appellant since appellant was four or five years old. A Senator of the territorial legislature testified that he had known appellant since appellant was 15 or 16 years old, and had always thought of him "as Hawaiian-born".

Appellant testified that his name was Kam Chong Wong, and that his married name was Chung Wong; that the witnesses who had testified in 1923 (Chun Wah Bun and Chong Chung) as to his Hawaiian birth were both dead; that his father, Wong Kwai Sung, died in 1908 when he was eight years old, and that his mother, Siu Shee, died when he was three years old; that both his mother and father were buried at Pauoa, but that there was quite a distance between the two graves; and that the copy of birth certificate he had presented in 1923 referred to his birth. There was also testimony that the records of births in the Territory of Hawaii were incomplete.

It is provided in 8 U.S.C.A. § 284 that: "Any Chinese person * * * arrested under the provisions of this chapter shall be adjudged to be unlawfully within the United States unless such person shall establish, by affirmative proof, to the satisfaction of such *. * * judge * * * his lawful right to remain in the United States."

The trial court found that appellant had failed to carry the burden of proof required by the statute, and entered the judgment of deportation from which this appeal was taken.

Appellant contends that the burden of proving the right to be admitted into the United States is on an applicant seeking admission; that the burden of proving the right to remain in the United States is on one whose status has not previously been determined by the immigration officers; but that where one's status has been previously determined by the immigration officers, in a subsequent attack on such determination, the burden is on the government to prove that the one in question fraudulently entered the United States. Hence, it is argued that since there was neither pleading nor proof of appellant's fraudulent entry into the United States, the judgment of deportation was erroneous.

We assume for the purposes of this decision that 8 U.S.C.A. § 221, which provides that "in any deportation proceeding against any alien the burden of proof shall be upon such alien to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States" is not here applicable. The precise facts before us are that appellee is seeking to deport under 8 U.S.C.A. § 282 a Chinese person who claims to be

a native-born citizen of the United States, and who had been previously determined to be such native-born citizen by the immigration officials. We specifically restrict our decision to cases disclosing such facts.

The decisions of this court at first glance seem not to be entirely consistent. The apparent confusion has probably been caused in large part by the two meanings commonly given "burden of proof". Burden of proof in one sense means the duty to establish a certain fact by a certain degree of proof, such as a preponderance of the evidence, clear and convincing evidence, or beyond a reasonable doubt. In another sense it means the duty to offer evidence, or the duty to go forward with the evidence.

The statutory authorization for such a proceeding as is here presented provides, in part, that: "Any Chinese person, or person of Chinese descent, found unlawfully in the United States, or its Territories, may be arrested upon a warrant issued upon a complaint, under oath, filed by any party on behalf of the United States, by any * * * judge * * * and when convicted, upon a hearing, and found and adjudged to be one not lawfully entitled to be or remain in the United States, such person shall be removed from the United States to the country whence he came. * * *" 8 U.S.C.A. § 282.

 Upon the hearing, the first step, or the duty of opening the evidence, rests on the government to show that the person sought to be deported, hereafter for convenience, called the alien, is a "Chinese person or person of Chinese descent".[1] Upon such a showing being made, 8 U.S.C.A. § 284 then controls and requires such alien to "establish, by affirmative proof, to the satisfaction of such * * * judge * * * his lawful right to remain in the United States". This contemplates that the alien has the burden of proof in both senses above mentioned. In other words, the alien has the duty to go forward with

the evidence, and he also has the duty to establish the fact (his lawful right to remain in the United States) by affirmative proof to a degree described in the statute as being "to the satisfaction of" the judge.

 If the alien in compliance with his duty to go forward with the evidence presents evidence that the immigration authorities have previously determined that the alien is a citizen of the United States, or otherwise entitled to remain here, the alien establishes a prima facie case which is sufficient to satisfy the statute, in the absence of contrary evidence, and which shifts to the government the duty to go forward with the evidence.[2] If the government complies with such duty and submits contrary evidence, such as evidence showing that the prior determinations were procured by fraud or as a result of error, then it is for the trial court to determine from the whole body of evidence whether the alien has complied with the statutory requirement compelling him to "establish, by affirmative proof, to the satisfaction of such * * * judge * * * his lawful right to remain in the United States". If the government's evidence consists only of proof that other aliens fraudulently entered the United States, such proof is not sufficient to overcome the alien's prima facie case.[3]

 It frequently happens that witnesses, in various proceedings before the immigration officials, have given testimony, which is recorded and kept. If such witnesses are presented at a trial like the one here involved, or if the records are offered as proof for the alien, it often appears that there are discrepancies in the testimony of a particular witness. In other words, such witness has given one answer to a particular question at one proceeding before the immigration officers, and a different answer to the same question at another of such proceedings, or at a trial like the one here. The object of a showing of discrepancies is to impeach the witness

---

[1] Low Foon Yin v. United States Immigration Com'r, 9 Cir., 145 F. 791, 792, 797; Tom Ung Chai v. Burnett, 9 Cir., 25 F.2d 574, 575.

[2] Doo Fook v. United States, 9 Cir., 272 F. 860; Lum Man Shing v. United States, 9 Cir., 29 F.2d 500; Choy Yuen Chan v. United States, 9 Cir., 30 F.2d 516; Leong Kwai Yin v. United States, 9 Cir., 31 F.2d 738; Fong Lum Kwai v. United States, 9 Cir., 49 F.2d 19; Lee Choy v. United States, 9 Cir., 49 F.2d 24; Lau Hu Yuen v. United States, 9 Cir., 85 F.2d 327.

[3] Leong Kwai Yin v. United States, 9 Cir., 31 F.2d 738; Fong Lum Kwai v. United States, 9 Cir., 49 F.2d 19; Lee Choy v. United States, 9 Cir., 49 F.2d 24.

or to give a ground for disbelieving him. Such discrepancies may accomplish that purpose, depending upon the gravity of the discrepancies. We know of no rule by which the seriousness of discrepancies are to be measured. Each case depends on its own facts.[4] About all that can be said is that if the discrepancies refer to a subject about which a reasonable man, in the same or a like situation in which the alien is, might give conflicting answers, then the discrepancies are not serious enough to warrant disbelief of the witness.

■ Here, it seems apparent that the birth certificate does not represent a record of appellant's birth. There is evidence to that effect which seems true, because it is highly improbable that two women, in the same community, with the same name, would bear a son on the same day and year to husbands having the same name, and would give the same name to each of the sons. The witnesses for appellant, consisting of the Clerk of the Supreme Court, Fong On, and the Senator, did not testify as to appellant's birth, but gave testimony as to their knowledge of appellant's life beginning at a time after his birth. Had there been no evidence contrary to such evidence, it might have been sufficient. See Lee Hin v. United States, 9 Cir., 74 F.2d 172. As to appellant's testimony that he was born in Hawaii, we think the discrepancies appearing in the testimony given at various times were about subjects concerning which a reasonable man would either be consistent, or would not testify at all.

The only evidence left favorable to appellant is that given before the immigration officials in 1922, by Chun Wah Bun and Chong Chung, the witnesses who were dead at the time of the trial herein. There was evidence that the former caused the birth certificate to be procured and told appellant that it was a record of appellant's birth. Assuming, without deciding, that such evidence was sufficient for dis-

believing Chun Wah Bun, the only evidence remaining is that of Chong Chung.

Chong Chung testified as follows:

"Q. Where was he [appellant] born? A. Palama.

"Q. How do you know he was born there? A. I lived near that place when he was born.

"Q. He was quite young when you went to China was he not? A. I knew him from his birth until he was 5 years old."

The government offered no direct evidence that appellant was not born in Hawaii. It offered evidence to show that the birth certificate was not a record of appellant's birth, and to show certain discrepancies, none of which affected the testimony of Chung Chong. Could the trial court lawfully disbelieve it?

■■ The hearing below was "judicial". Ng Fung Ho v. White, 259 U.S. 276, 283, 42 S.Ct. 492, 66 L.Ed 938. No question as to credibility of Chong Chung so far as his demeanor and actions in testifying, is present here, because only a written record of his testimony is presented. The evidence was not hearsay. There was no impeachment, or attempt to impeach, and no contrary evidence. The weight of the testimony is not involved, because it is not testimony from which we must infer the ultimate fact, but is evidence of the ultimate fact itself. It is, therefore, either true or false. The presumption is that the witness testified truthfully. No other reason for disbelieving the testimony appears unless we can say the fact is impossible or improbable. It manifestly is not impossible. Is it improbable? To answer that question it is necessary to decide the probabilities of names. The name "Wong" seems to have prolific use. Examination of the Federal Digest to and including the 1939 Annual volume discloses 158 cases showing that one of the parties was named "Wong". In three cases,[5] "Wong" appears with the name "Kim". It appears[6] with "Ching", with "Chong",[7]

[4] Examples where it has been held that the alien failed in his proof are: White v. Chan Wy Sheung, 9 Cir., 270 F. 764; Tom Ung Chai v. Burnett, 9 Cir., 25 F. 2d 574; Young Mew Song v. United States, 9 Cir., 36 F.2d 563; Chan Nom Gee v. United States, 9 Cir., 57 F.2d 646. Examples where the alien's proof was upheld are: Choy Yuen Chan v. United States, 9 Cir., 30 F.2d 516; Leong Kwai Yin v. United States, 9 Cir., 31 F.2d 738;

Fong Lum Kwai v. United States, 9 Cir., 49 F.2d 19; Lau Hu Yuen v. United States, 9 Cir., 85 F.2d 327.

[5] United States v. Wong Kim Ark, 169 U.S. 649, 18 S.Ct. 456, 42 L.Ed. 890; Wong Kim v. United States, 9 Cir., 38 F.2d 777; Proctor v. Wong Kim Yuen, 9 Cir., 88 F.2d 1017.

[6] United States v. Wong Ching Hun, 2 Cir., 65 F.2d 1022.

[7] Wong Ding Chong v. United States,

with "Chun"; [8] and with "Chung" in two cases, the name being the same in both. [9] Appellant's alleged name is Wong Kam Chong. The name "Wong" also appears with "Sing" in three cases. [10] Appellant's father's name is most frequently given as Wong Kai Sing. In view of these facts, we think there should have been evidence to show that the fact was improbable, and in the absence thereof will not assume it to be improbable.

In short, there is no evidence in the record, or other reason present, which would justify a disbelief of the witness. See 70 C.J. 760, §§ 915, 916 et seq. The uncontradicted evidence should, therefore, have been accepted. Lau Hu Yuen v. United States, 9 Cir., 85 F.2d 327, 331.

Reversed.

---

201 U.S. 643, 26 S.Ct. 758, 50 L.Ed. 902.

[8] Wong Chun v. United States, 9 Cir., 170 F. 182.

[9] Wong Chung v. United States, 9 Cir.,

244 F. 410; United States v. Wong Chung, D.C.N.Y., 92 F. 141.

[10] Wong Wing Sing v. Nagle, 9 Cir., 299 F. 601; Wong Hai Sing v. Nagle, 9 Cir., 47 F.2d 1021; In re Wong Sing, D.C.Cal., 83 F. 147.